## PARKER v. PARKER et al.

No. 8941—Opinion Filed May 13, 1919.

Rehearing Denied July 29, 1919.

(Syllabus by the Court.)

1. Deeds—Competency of Grantor—Evidence —Sufficiency.

The evidence in this case examined, and held sufficient to support the finding of the court that Clark Parker at time of executing the deed was an habitual drunkard and mentally weak, and that a confidential and fiduciary relation existed between him and his father, and that he was under the influence of his father at said time.

2. Same—Validity—Confidential Relations— Burden of Proof.

When a confidential relation exists between a parent and child, and the child is mentally weak, and such confidential relation is such that the parent exercises an influence over the child, and a business transaction takes place

between them, resulting in a conveyance to the parent from the child, and the parent is benefited by the transaction, either as a gift, or by reason of an inadequate consideration, the law presumes everything against the transaction; and leaves the burden of proof upon the person benefited, to show that the confidential relation has been as to that transaction suspended, and that the transaction was fairly conducted.

### 3. Same—Evidence—Sufficiency.

The evidence of the court examined, and held to be sufficient to support the finding of the court as to the facts and the judgment of the court in setting aside the deed from the son to the father upon the grounds of undue influence; that at the time of the execution of the deed the son was mentally weak and an habitual drunkard; and the evidence failed to disclose that said transaction was fairly made, or that undue influence was not exerted by the father over the son.

Error from District Court, Oklahoma County; Geo. W. Clark, Judge.

Action by Colonel Parker against Ella M. Parker and another, cross-petition by defendant Jennie L. Parker. From judgment for cross-petitioner, the plaintiff appeals. Affirmed.

Everest, Vaught & Brewer, B. T. Hainer, and Burns & Toney, for plaintiff in error.

H. N. Boardman, for defendant in error.

McNEILL, J. This action was commenced by Colonel Parker against Ella M. Parker and Jennie L. Parker, a minor, to quiet title to lots 40 to 48, inclusive, in block 16, Parker and Colcord addition to Oklahoma City, and lots 9 and 10, block 24, Second Main Street addition to Oklahoma City, Okla. The defendant Ella M. Parker filed an answer and cross-petition, but a demurrer was sustained to the same. The defendant Jennie L. Parker, by her guardian Ella M. Parker, filed an answer and cross-petition alleging, in substance, that she was the sole and only heir of Clark Parker, deceased; that Clark Parker and her mother, Ella M. Parker, homesteaded a certain tract of land, and received a patent to the same, about the year 1901; that a portion of the same was platted and dedicated for townsite purposes and sold to Colcord, and was known as the Parker and Colcord Townsite Addition; that the land in question, to wit, lots 40 to 48, in block 16, supra, was reserved from the transfer conveying said land to Colcord, and was to remain the property of Clark Parker and Ella M. Parker as a homestead, together with 10 lots in block 8, same addition, and alleging, further, that Clark Parker and Ella M. Parker were divorced on the 5th day of April, 1909, and that Clark Parker died in March, 1911; that Clark Parker was an habitual drunkard, and totally incapable of transacting any business of any nature whatsoever for himself from the date of the platting of the land until his death, all of said facts being known to Colonel Parker; that by undue influence and for the purpose of defrauding Clark Parker, Colonel Parker secured from Clark Parker powers of attorney, for the purpose of defrauding the defendant, and prevailed on Clark Parker and Ella M. Parker to move to Ohio in 1903; at that time Clark Parker was the owner of $100,000 in cash and notes, and that the said money was obtained from the community property and joint earnings of Clark Parker and Ella M. Parker, and that said Colonel Parker obtained a power of attorney and collected the same and appropriated all of the same to his own use; that on the 27th day of December, 1905, Clark Parker executed a warranty deed to Colonel Parker for the lots above described, and including 10 lots in block 8, same addition; that at the time of executing said deed he (Clark Parker) was totally incompetent by reason of being an habitual drunkard, and by reason of his incompetent mental condition, and by reason of undue influence exercised over him by Colonel Parker; that at that time a confidential and fiduciary relation existed between Clark Parker and Colonel Parker; that at the time of receiving the deed the property was worth $25,000, and that Colonel Parker paid nothing for the same; and alleges by reason of said facts the deed was null and void, and the petition also asked for an accounting for rents and profits.

On the trial of the case the court rendered judgment in favor of Jennie L. Parker and against the plaintiff, and quieting title and setting aside the deed from Clark Parker to Colonel Parker, and rendering judgment against Colonel Parker for the rents collected from said premises, and interest amounting to $16,477.

It developed that the 10 lots in block 8 had been sold to innocent purchasers by Colonel Parker for $11,000, and no decree was rendered as to that portion of the property. Jennie L. Parker then asked to amend, and asked judgment for $11,000 for the lots that had been sold, and for additional amounts for Colonel Parker failing to account for the proceeds of the sale of the property originally platted. The court held these issues were not proper subjects to be litigated in this action, and defendant dismissed her cross-petition as to these issues, and they are not before this court for determination.

The plaintiff filed a motion for new trial, but the same was overruled and the case is now here on appeal. The parties will be referred to as Colonel Parker, plaintiff, and

Jennie L. Parker, defendant, being the position they occupied in the court below, and occupying the same position in this court.

The questions involved are practically two: First, is the evidence sufficient to support the judgment of the court? Second, after the court found that Clark Parker, deceased, was mentally weak, and that a fiduciary and confidential relation existed between him and his father, then was the burden upon the plaintiff to show that the transaction was fair and an adequate consideration paid for the premises and was without undue influence?

The court made the following finding:

"Clark Parker, since about 1893, had been a horse trader and dealer. He was much below the average in intelligence; was an habitual drunkard for fifteen years immediately prior to his death; was incompetent practically all of that time to transact business of importance; and was completely under the influence of his father, who managed all of his affairs except his dealing in horses.

"Under the circumstances disclosed by the record in this case, the burden was upon the plaintiff to show that Clark Parker when he executed this deed to Colonel Parker on December 27, 1905, was legally capable of so doing; that it was in fact his free act and deed; that there was valuable consideration therefor; and that it was not brought about by the undue influence of his father, who was grantee therein. In this he has failed. The deed should be set aside, and the plaintiff should be required to pay to the defendant and cross-petitioner, Jennie L. Parker, the proceeds of the funds collected by him as shown by the evidence, and in addition thereto an amount equal to the rental value of the premises for the time the same were in his possession and not covered by the collections herein found to have been made by him."

The court's findings may be divided as follows:

First. Clark Parker was much below the average in intelligence, and an habitual drunkard, and had been for 15 years immediately prior to his death.

Second. He was incompetent practically all of that time to transact business of importance.

Third. He was completely under the influence of his father, who managed all of his affairs except his dealing in horses.

The plaintiff argues that these findings are not supported by the evidence.

First. Was he below the average in intelligence and an habitual drunkard? The evidence upon this question was conflicting. The defendant introduced more than 20 witnesses in order to substantiate the fact that Clark Parker was an habitual drunkard. These witnesses dealt with his habits from about the year 1895 to 1911, at the time of his death. Numerous witnesses told and related the fact of his being intoxicated practically all of the time they knew him; his rambling conversation; the fact that he had taken the "Keely Cure," upon one or two occasions, after going to the state of Ohio; that he was indebted to the saloon keeper in the sum of $1,000; the fact that he was drunk whenever witnesses saw him. The testimony of the wife was to the effect that he was intoxicated practically all of the time; that he took no interest in the home life; that while in a drunken condition he often threatened to do violence to her and the child; that the divorce was obtained practically upon the grounds of habitual drunkenness. The wife relates the fact that at the time of the birth of the child in 1900, being the defendant in this action, he was drunk and laid in a haystack all night. While it is true other witnesses stated that he was not an habitual drunkard, yet practically all agree that he drank, and all had seen him intoxicated at some time. There were between 40 and 50 witnesses who gave testimony in regard to this fact. We cannot say that the finding of the court upon this question is contrary to the weight of the evidence, but we are of the opinion that the evidence of the people who were most closely associated with Clark Parker, the people who were familiar with his everyday life, support the finding of the court that he was an habitual drunkard.

As to whether he was below the average in intelligence, we think this fact is sustained by the evidence; and in fact we cannot remember of any particular testimony adduced to show where he exhibited any degree of intelligence, but the evidence clearly supports this to be the fact, even though in a drunken condition he was a fairly good horse trader. That appeared to be his only ambition in life, and he cared for nothing else; his family and his father and sisters appeared to have no place in his mind.

As to the next proposition, was there a confidential and fiduciary relation existing between Colonel Parker and Clark Parker, and was Clark Parker under the influence of his father, Colonel Parker? We think these findings are also supported by the great weight of the evidence, and are practically without contradiction.

After Clark Parker filed on this land, which was in 1895, Colonel Parker went to Ohio, and was gone for some time. In May, 1897, Colonel Parker's wife died, and then he and his two little girls moved to the home of Clark Parker. After that time, until the

platting of the land in 1901, the farming of this place was looked after by the plaintiff. Whatever was sold from the premises was sold by the plaintiff. The grocery bills were looked after by him. He and the wife of Clark Parker attended to the selling of the butter, milk, and eggs and everything that went to the caring for the home. During that time Clark Parker was engaged in trading horses. As soon as the patent for the land was obtained and the advisability of selling the same arose, Clark Parker paid no attention to the same, but Colonel Parker made the contract, and the only thing that the son did was to sign the contract and the deeds. Colonel Parker received all the money, amounting to at least $65,000. For the grocery bill, which had accumulated to some $500 prior to this time, Colonel Parker signed a note and thereafter paid the same.

Shortly after the platting of the land, and after receiving more than $40,000 for the same, Colonel Parker purchased some land in Ohio, took the deed in the name of Clark Parker, without even consulting the son. The evidence does not disclose that Colonel Parker ever consulted him upon any proposition, but dealt as he thought best. If a deed was to be signed Clark Parker signed it, and if a contract was to be signed he signed it at the request of his father. The improvements on lots 40 to 48, block 16, supra, to the amount of $4,000, were made by Colonel Parker. This was the home and barn where Clark Parker was living. Colonel Parker had the overseeing of the same, directed what was to be done, and when it was to be done. The purchasing of lots 9 and 10, block 24, from Mr. Haley, was consummated by Colonel Parker. The improvements of over $11,000 were placed upon lots 9 and 10, block 24, supra, by Colonel Parker. The only transactions since 1895 outside of trading horses that Clark Parker appeared to have anything to do with were the trading for a piece of land at Capitol Hill, and this was brought about by the trading of horses, and in disposing of the same by receiving stock therefor, together with buying a hotel or saloon in Ohio. The evidence further disclosed that the grocery bills in Ohio after Clark Parker and his wife had moved there were settled for, or a great portion of them, by Colonel Parker. The evidence further disclosed that Clark Parker's wife, after moving to Ohio, asked him about the rents, and about the business, and he said he knew nothing about the same, but his father was looking after the same for him. The transactions concerning the real estate amounted to the sum of $65,000. The evidence failed to disclose the time when there was any consultation even between the father and son regarding the same, but shows that the father attended to all of the business, so we think the evidence clearly supports to finding of the court that the confidential and fiduciary relation existed between father and son, that the son was weakminded caused by drunkenness, and that he was under the absolute domination and influence of his father. We think the evidence supports the finding of the court upon these propositions.

The evidence does not disclose the exact value of the property deeded December 27, 1905, but the lots in block 8, it is admitted, were disposed of by Colonel Parker for $11,000. As to lots in block 16, there is no evidence as to what the value of the same was, but it was admitted about the year 1902 Colonel Parker placed at least $4,000 worth of improvements upon the same. Lots 9 and 10 in block 24, cost $1,000, and improvements of $11,000 were placed on the same, and in addition thereto sidewalk improvements. All of this was prior to the time of deed to Colonel Parker. The value is not testified to, but without evidence to the contrary it would be presumed that lots 9 and 10, block 24, would be worth what they cost and improvements placed thereon, or $12,000; that the lots in block 16 had improvements on them to the value of $4,000; that the lots in block 8 were sold for $11,000; without placing any value upon the lots in block 16, the value of the property would be approximately $27,000.

The question then presented is: After the court finding that the son was weak mentally, an habitual drunkard, under the influence of his father; that a confidential and fiduciary relation existed between them; that the father had been dealing with the son's real estate, and had sold and collected practically $65,000 in notes and cash, without any evidence that any settlement had ever been had between them; then this transaction showing the transfer of property of the value of at least $27,000 for a recited consideration in the deed of $14,000—did the court properly hold that under those circumstances the burden of proof was upon the plaintiff to show that at the time of the execution of the deed Clark Parker was legally competent to execute the deed, that the deed was executed as his free act and deed, and that a valuable consideration was paid therefor, and the transaction was not brought about by the undue influence of the father, the grantee therein named, over the son?

The evidence disclosed that Colonel Parker took his son Clark Parker to a notary public, introduced him, stating he wanted to sign a deed, paid for the acknowledgment. This deed was executed about a week after

the wife had sued for a divorce, and almost as soon as Colonel Parker arrived in Ohio from Oklahoma.

Under this state of the record the court held that the burden was upon the father to show that there was a valuable consideration, that the transaction was not brought about by undue influence, and at the time Clark Parker was mentally competent.

The court below held when all of these conditions existed the burden was then upon Colonel Parker to prove that the transaction was fair, that the consideration was paid, and that the same was adequate, and that no undue influence was exercised by him at the time over the son.

In a case where the question of parent and child, guardian and ward, principal and agent, was involved, being the same question involved in the case at bar, and being the case of Daniel v. Tolon, 53 Okla. 666, 157 Pac. 756, the court, speaking through Mr. Justice Sharp, on page 672 of 53 Okla., on page 758 of 157 Pac. said:

"While equity does not deny the possibility of valid transactions between parties where a fiduciary relationship exists, yet because every such relation implies a condition of superiority held by one of the parties over the other, in every transaction between them by which the superior party obtains a possible benefit equity raises a presumption against its validity, and casts upon that party the burden of proving affirmatively its compliance with equitable requisites, and of thereby overcoming the presumption. The broad principle on which the court acts in cases of this description is that wherever there exists such a confidence, of whatever character that confidence may be, as enables the person in which confidence or trust is reposed to exert influence over the person trusting him, the court will not allow any transaction between the parties to stand, unless there has been the fullest and fairest explanation and communication of every particular resting in the breast of the one who seeks to establish a contract with the person so trusting him. Whenever two persons stand in such a relation that, while it continues, confidence is necessarily reposed by one, and the influence which naturally grows out of that confidence is possessed by the other, and this confidence is abused, or the influences exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his position will not be permitted to retain the advantage, although the transaction could not have been impeached if no such confidential relation had existed. Tate v. Williamson, L. R. 1 Eq. 536; Tate v. Williamson, L. R. 2 Ch. 55, 60; Rhodes v. Bate, L. R. 1 Ch. 252, 257. The principle announced and its effect upon the rights and liabilities of the parties thereto extends to transactions between a trustee and a beneficiary, principal and agent, attorney and client, guardian and ward, parent and child, as well as to other relations."

We think the above case is controlling in the case at bar.

This same rule is announced in Jones on Evidence, vol. 2, p. 104, as follows:

"When confidential relations existing between two persons result in one having an influence over the other, and a business transaction takes place between them resulting in a conveyance to a person holding the influence over him, the law presumes everything against the transaction, and leaves the burden of proof upon the person benefited to show that the confidential relation has been as to that transaction suspended, and that it was as fairly conducted as between strangers."

Elliott on Contracts, vol. 4, p. 1036, lays down the following rule:

"The influence of a parent over a child is such that if the parent takes a voluntary conveyance, or one upon an inadequate consideration, from a son or daughter, the burden of proof is upon such parent to show that he did not take any unfair advantage of his influence and authority in the transaction."

The same principles are announced in cases similar to the one at bar, though not identical, but it has been uniformly applied by this court in the following cases: Peychouse v. Adams, 52 Okla. 495, 153 Pac. 65; Miller v. Thompson, 69 Oklahoma, 171 Pac. 850; Hogan v. Leeper, 37 Okla. 655, 133 Pac. 190, 47 L. R. A. (N. S.) 475; Bruner v. Cobb, 37 Okla. 228, 131 Pac. 165, L. R. A. 1916D, 377.

While it is true that the deed in the case at bar recites a consideration, and it is prima facie evidence as between the parties that the consideration has been paid, as was held in the case of Adams Oil & Gas Co. v. Hudson, 55 Okla. 386, 155 Pac. 220, yet this was the only evidence introduced in the case to show that the consideration of any amount has been paid. Under the facts in this case, the court held, and we think rightly so, that the same was not sufficient. The evidence disclosed that in 1900, and prior to the time of platting this land in 1901, all of the parties were without means except the homestead of Clark Parker. At the time of the death of Clark Parker the evidence disclosed that his estate amounted to $240. The father at the time of platting the land had no money or property that he accounted for. He collected all the proceeds of the sale of this land, amounting to at least $65,000, and at the time of the death of the son was in very comfortable circumstances.

We think the evidence in this case supports the finding of the court that Clark

Parker was an habitual drunkard and mentally weak, and that a confidential and fiduciary relation existed between them, and he was under the absolute influence of his father at the time of executing the deed. We think the evidence is sufficient to further find that no consideration was paid for these premises; but that would be unnecessary. Colonel Parker relied solely upon the recital in his deed to show that said consideration had been paid and the transaction fairly conducted. This was not sufficient.

From the evidence in the case we feel that the judgment of the court is supported by the weight of the evidence, and that there is no error in the record, and that the judgment of the court should be affirmed.

SHARP, PITCHFORD, H A R R I S O N, RAINEY, and JOHNSON, JJ., concur.