## ROLLISON v. MUIR.

No. 20783. Opinion Filed May 9, 1933.

John Embry, Charles Edward Johnson, V. P. Crowe, and Raymond Tolbert, for plaintiff in error.

J. B. Dudley and Everest, McKenzie, Halley & Gibbens, for defendant in error.

OSBORN, J. This is an appeal from a judgment of the district court of Oklahoma county canceling an option to purchase certain lots in Oklahoma City, executed by Ida Muir, plaintiff below, to J. W. Rollison, defendant below.

Plaintiff alleged in her petition that the defendant is by profession a real estate broker, conversant with the values of real estate in Oklahoma City and with the value of the property which is the subject of this action, and that plaintiff is inexperienced in such matters and unacquainted with such values; that plaintiff and defendant had lived in the same general vicinity, and that plaintiff had known defendant about ten years and had confidence and trust in him; that plaintiff had been divorced about two years prior to the transaction involved, and that defendant had had said property listed with him for sale as a real estate broker since about the time of said divorce, and that plaintiff had advised with him from time to time as to the value of said property, and as to the prospect of defendant obtaining a purchaser therefor; that said defendant did not have an exclusive listing of said property.

Plaintiff further alleged that on or about the 30th day of June, 1927, the defendant came to her home and stated to her that he desired an exclusive listing of said property with him for a period of one year at a price of $8,000; that he had an exclusive listing of the adjoining property, belonging to a third person, for the same price, and that by reason of his being able to transfer title to both pieces of property at the same time, thereby doubling the frontage of said property, he would be able to make a more advantageous sale of plaintiff's property; that he produced a written instrument which he represented to her to be such exclusive listing contract, and that, although she could read and write, she did not read the same, for the reason that as she started to read said contract the defendant took same out of her hands, pointed to the $8,000 mentioned in the contract, assured her that it embraced their understanding, and she thereupon signed same without knowing its contents and by reason of her trust and confidence in him; that she did not have information that same was an option to purchase said property for several months thereafter, but at all times thought and believed said contract was merely an exclusive listing contract; that at the time of the execution of said contract the defendant gave her a check for $5. Said contract is as follows:

"This agreement, made this 30th day of June, 1927, between Ida Muir, party of the first part, and J. W. Rollison, of the second part; Witnesseth: That in consideration of $5 in the hand paid by said second part to first part, the receipt of which is hereby acknowledged, said first part hereby bargains, sells, and grants to second part the exclusive option and right, for the term of twelve months from date, to purchase from first party the following property: Lots four (4) and five (5) in Block seven (7) Main street addition to Oklahoma City, as per the recorded plat thereof, together with all improvements thereon, at the sum and price of $8,000. Witness our hands and seals at Oklahoma City, Okla., this 30th day of June, 1927. Ida Muir. J. W. Rollison.

"State of Oklahoma, Oklahoma County, ss. Before me, the undersigned, a notary public, in and for said county and state, on this 19th day of July, 1927, personally appeared Ida Muir and J. W. Rollison, to me

known to be the identical persons who executed the within and foregoing instrument and acknowledged to me that they executed the same as their free and voluntary act and deed, for the uses and purposes therein set forth. Given under my hand and seal the day and year last above written.

"Louis H. Johnson, Notary Public.

"My commission expires June 24, 1929.

"(Seal)"

There is some contention between the parties concerning the acknowledgment to said instrument.

Plaintiff alleges that said contract was induced by deceit and fraud in that the contract was other and different from the terms and conditions as discussed by the parties prior to and at the time of the execution thereof; that said property was of the value of $15,000, instead of $8,000 as represented by defendant; that defendant did not have an exclusive listing of the adjoining property, nor did he have any listing whatever thereof; that plaintiff believed, as a result of the conversation had between the parties, that defendant would endeavor to sell said property for as great a sum as possible, and that the increase of price obtainable by him was to be for her benefit.

The plaintiff tendered the $5 paid as a consideration for said instrument and prayed to have same canceled.

The defendant answered by a general denial, alleged his good faith, and that he was able, ready and willing to exercise said option, and tendered said sum of $8,000, and prayed for specific performance.

The cause was tried to a jury, in an advisory capacity, and special interrogatories were submitted, the answers to which were adopted by the trial court as his findings of fact, and judgment was rendered in favor of plaintiff, canceling said contract and denying defendant any relief. Said interrogatories and the answers thereto are as follows.

"Interrogatory No. 1, Was plaintiff's property listed with defendant for sale at the best price obtainable on and prior to June 30, 1927? Answer: Yes, he was her agent.

"Interrogatory No. 2. If you answer interrogatory No. 1 in the affirmative, then you will, in answer to this interrogatory, state whether the defendant at the time of the execution of said contract made any statements or representations to the plaintiff as to the value of the property at said time, and if so state briefly what those representations were? Answer: It appears that defendant represented to plaintiff that the Bradford property was obtainable for $8,000, and that if she would sell for same amount defendant could handle the sale of both properties to better advantage, and that plaintiff would benefit by any greater amount obtainable.

"Interrogatory No. 3. If you answer that the defendant did make any statements or representations to the plaintiff as to the value of the property on June 30, 1927, did the plaintiff in this case solely rely upon the same and were the statements thus made by the defendant to the plaintiff true or untrue? Answer: It appears that plaintiff relied on defendant's statement as to value of property, and that such statements were misleading and untrue.

"Interrogatory No. 4. Did the defendant, at the time of the execution of the option agreement on June 30, 1927, represent to the plaintiff that he had the Bradford property listed for sale at $8,000, and if so, did the plaintiff rely thereon in the execution of said contract? Answer: Yes (to both parts)."

The main question presented for a reversal of said cause is that the judgment of the trial court is clearly against the weight of the evidence. Subsidiary questions, relating to the alleged improper introduction of certain testimony, are raised.

We have carefully reviewed the record in this case. The jury found, and the record supports said finding, that defendant represented to plaintiff that the adjoining property was listed with him for $8,000, and that plaintiff would profit by a greater amount obtainable for her property if defendant were in position to make a sale of both properties at the same time. This is wholly inconsistent with the terms of the option, for plaintiff under said instrument would receive only the consideration therein named regardless of the increased price at which said property might eventually be sold. It is shown that the defendant, through other brokers, was attempting to sell said property for $15,000.

The jury further found, and said finding is not against the clear weight of the evidence, that prior to said contract the defendant had been engaged as an agent of plaintiff to sell said property. It may be that the evidence in this case does not warrant the conclusion that the plaintiff, by reason of close association, had a right to place implicit confidence in the statements of defendant. It is sufficient, however, that a showing of the relationship of principal and agent be made, and the law concludes therefrom a fiduciary relationship. Eastburn v. Espalla, 215 Ala. 650, 112 So. 232, 53 A. L. R. 134.

268

A principal is not charged with the duty of constant watch for protection against the agent's fraud. On the ground of public policy, the courts have always construed such relation to be fiduciary in its nature, and have required a showing of utmost good faith and honesty in a transaction where the agent purchased the property which his duty required him to sell.

It is noted that the consideration for the rights claimed by defendant is insignificant, being the sum of $5 for an option to purchase within one year property of the value of at least $8,000. This pitiful sum in no wise protected plaintiff against a possible decline in value of said property. This circumstance weighs heavily when taken in connection with the finding of agency, and therefore fiduciary relationship. The value of said property was in serious dispute, several witnesses having testified that it was of the value of $15,000. The adjoining property was not at the command of defendant, as represented by him to plaintiff at the time of the execution of said option contract. Thus the hope and expectation induced in the mind of plaintiff that her property. when sold with the adjoining property, would yield a greater consideration to her, were obviously induced by representations made by defendant and relied upon by plaintiff, which had their foundations in a designing abuse of the confidence and trust reposed by plaintiff in defendant as her real estate broker, who would procure for her the greatest sum obtainable for her property.

In the case of In re Spann, 51 Okla. 309, 152 P. 68, it is said:

"Whenever there exists between parties confidence on the one hand, and influence on the other, from whatever cause they may spring, equity requires in all dealings between them the highest degree of good faith on the part of him in whom the confidence is reposed."

See Hogan v. Leeper, 37 Okla. 655, 133 P. 190, 47 L. R. A. (N. S.) 475.

In the case of MacDaniel v. Schroeder, 128 Okla. 91, 261 P. 224, it is said:

"The record is complete to the effect that she relied upon their advice and counsel and adhered graciously to their suggestions and seemingly with never a thought of selfishness in the settlement out of which arose the written contracts, the subject of this action. The principal inquiry, therefore, is, Were these parties standing in confidential relations? This record compels us to answer this issue in the affirmative. What. then, is the law governing contracts entered into between persons occupying that relation?

" 'The term "fiduciary or confidential relations", as used in this connection, is a very broad one. It has been said that it exists, and that relief is granted, in all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed. The origin of the confidence and the source of the influence are immaterial. The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts and relies upon another. The only question is, Does such a relation in fact exist?' 2 Pom. Eq. Jur. 947.' "

In the case of Daniel v. Tolon, 53 Okla. 666, 167 P. 756, it is said:

"While equity does not deny the possibility of valid transactions between parties where a fiduciary relationship exists, yet, because every such relation implies a condition of superiority held by one of the parties over the other, in every transaction between them by which the superior party obtains a possible benefit, equity raises a presumption against its validity, and casts upon that party the burden of proving affirmatively its compliance with equitable requisites, and of thereby overcoming the presumption. The broad principle on which the court acts in cases of this description is that wherever there exists such a confidence, of whatever character that confidence may be, as enables the person in which confidence or trust is reposed to exert influence over the person trusting him, the court will not allow any transactions between the parties to stand, unless there has been the fullest and fairest explanation and communication of every particular resting in the breast of the one who seeks to establish a contract with the person so trusting him. * * *" Parker v. Parker, 75 Okla. 234, 182 P. 697, 11 A. L. R. 720.

In the case of Treat v. Schmidt, 69 Colo. 190, 193 P. 666, it is said:

"An agent to sell cannot purchase the property for himself unless he makes known to his principal that he is such purchaser and acquaints him with all the facts, an inhibition which applies regardless of the agent's good faith, so that a deed to an agent to sell from his principal is voidable by the latter."

In the case of Tatsuno v. Kasai, 70 Utah, 203, 259 P. 318, 62 A. L. R. 54, it is said:

"Where an agent in violation of his duty and of the confidence reposed in him to sell property of his principal to the injury and detriment of the principal, sells the property to himself or takes it without disclosing such fact to the principal, the principal, upon discovering the fact, has the election to accept the situation, ratify the sale, and seek to recover his damages, or he may repudiate the transaction and seek to be placed in statu quo by demanding the re-

turn of the property or its value at the time of the repudiation, if timely made."

Defendant contends that there was no confidential or fiduciary relation existing between the parties at the time of the execution of the option contract, and that since he was taking a contract to himself, their interests were adverse, and they were dealing at arm's length, citing the following cases: Tillman v. Gazaway, 128 Okla. 183, 261 P. 935; Cooley v. Miller (Cal.) 105 P. 981; Carson v. Wiley (Wash.) 161 P. 1111; Board of Trustees v. Blair (W. Va.) 32 S. E. 203; Carter v. Jolly (Ky. L. Rep.) 22 S. W. 747; Pearsall v. Hirsh, 14 N. Y. S. 305; Fisher's Appeal, 34 Pa. 29; Lamb Knit-Goods Co. v. Lamb (Mich.) 78 N. W. 646.

These cases are not controlling herein, since in this case there is a finding by the jury, approved by the court and supported by the evidence, that the relation of principal and agent existed prior to and at the time of the execution of the option contract.

Several of defendant's assignments of error may be summarized as follows: That it was the duty of plaintiff to read the option contract before signing it, and, having failed to do so, she cannot now urge fraud predicated on the contents of the writing, and should not be allowed to testify that she did not know or understand the nature and effect of the contract, citing the following authorities: Colonial Jewelry Co. v. Bridges, 43 Okla. 813, 144 P. 577; White Sewing Machine Co. v. McCarty, 58 Okla. 545, 160 P. 495; Ames v. Milam, 53 Okla. 739, 157 P. 941; Ozark States Trust Co. v. Winkler, 84 Okla. 7, 202 P. 12; Pine v. Lenox Drilling Co., 119 Okla. 226, 249 P. 420; J. B. Colt Co. v. Florence, 128 Okla. 15, 261 P. 142.

We find no fault with the general rule announced in those cases, but the books are full of cases recognizing the exceptions to said rule, and the facts of this case we believe bring it within said exceptions. As was said in the case of Heath Delivery Service v. Michigan Mutual Liability Co., 257 Mich. 482, 241 N. W. 191;

"The rule requiring a party to read a contract is not a rule of thumb, but one of equity and sense."

In the case of Dovich v. Chief Consolidated Mining Co., 53 Utah, 522, 174 P. 627, it is said:

"The second request was to the effect that, in addition to finding the release was procured by false and fraudulent representations, the jury must go further, and find that the defendant was guilty of fraud in preventing plaintiff from having the release read to him before he signed it.

"Appellant calls our attention to scores, if not hundreds, of cases which it claims support its contention. We have not been able to read or consider all of them, for they are too numerous for the time we have at our command. We have read sufficient, however, to satisfy our minds that the cases cited are generally distinguishable from the case at bar. * * *

"Every case must be decided upon its own facts. * * *

"* * * The question, under these conditions, naturally arises, why should plaintiff not trust Fitch implicitly? Why should he be suspicious and required to exercise the extraordinary care and diligence contemplated in defendant's requests?"

In the case of Mazuran v. Stefanich (Cal.) 272 P. 772, it is said:

"Where parties occupying a relation to one and another which the law regards as confidential, a written contract which one of the parties inducing the other to sign by knowingly misrepresenting its contents may be set aside."

In the case of Smith v. Thesmann, 20 Okla. 133, 93 P. 977, 15 Ann. Cas. 1161, it is said:

In the case of Smith v. Thesmann, 20 Okla. fraud or deceit, a party to a transaction is bound by the writing evidencing the agreement, though he was, in fact, ignorant of its contents, but where the signature to the agreement is induced by the misrepresentation of the other party as to its contents, and the signer was ignorant thereof, he may introduce parol evidence of contemporaneous acts, declarations, and conversations to show the true nature of the agreement."

In the instant case the trial court found not only that there was a fiduciary relation between the parties, but also that the defendant made false and fraudulent representations in several particulars for the purpose of misleading plaintiff to her detriment and to the benefit and profit of defendant. The plaintiff testified that when she started to read the contract the defendant took the contract from her hands, pointed to the consideration of $8,000, mentioned as a minimum sum for which the property should be sold, represented to her that the contract embodied their previous understanding, and these circumstances, coupled with the false hope induced by the other misrepresentations, and that a greater sum than $8,000 could be realized for said property, induced her to sign a contract for a nominal consideration, which, if sustained, would effectively bar her from realizing the benefits of the very purpose of the contract as represented to

her by her agent in whom she had the right to place her trust and confidence. The rule of law contended for by defendant is not so inflexible as to prevent plaintiff, under such circumstances, from being relieved from the consequences of defendant's imposition upon her, effectuated by fraud and abuse of confidence.

The judgment of the trial court is affirmed.

CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, BAYLESS, and WELCH, JJ., concur.

RILEY, C. J., and BUSBY, J., absent.