## BLACKSTOCK OIL CO. v. CASTON.
## SAME v. CURTIS.

Nos. 28132, 28133.

Rehearing Denied March 7, 1939.

Application for Leave to File Second Petition for Rehearing Denied March 21, 1939.

George S. Ramsey, Villard Martin, Garrett Logan, L. H. Harrell, and Logan Stephenson, for plaintiff in error.

Anglin & Stevenson and O. S. Huser (Denver N. Davison, of counsel in District Court), for defendants in error.

OSBORN, J. M. C. Caston and C. C. Curtis, hereinafter referred to as plaintiffs, instituted separate actions in the district court of Pontotoc county against the Blackstock Oil Company, hereinafter referred to as defendant, wherein it was sought to cancel an assignment of an undivided one-eighth interest each in an oil and gas lease and to recover a share of the profits derived from the operation of said lease by the defendant. The issues were joined and the causes were jointly tried to the court. From a judgment in favor of both plaintiffs ordering a cancellation of the assignment and an accounting, defendant has appealed. It is conceded that the issues of law and fact are identical in each of the cases, and they have been consolidated in this court by appropriate order.

It appears that prior to October 18, 1935, L. M. Kaiser, J. A. Bracken, and plaintiffs, C. C. Curtis and M. C. Caston, were the owners of an oil and gas lease covering 30 acres of land in Pontotoc county. On October 18, 1935, the four owners assigned and transferred to defendant an undivided one-half interest in said lease, in consideration of which defendant was to drill three wells upon said land free of charge to them, said wells to be drilled to the producing horizon in the Fitts pool "from the top of Viola lime to the base of the McLish sand". The contract between the parties was in writing, and in addition to the three free wells, provision was made for drilling additional wells, the cost to be distributed in proportion to ownership. It appears that H. L. Blackstock, president of the defendant corporation, acted for and in behalf of said corporation, as its agent, in arranging the terms of the contract. In pursuance of the provisions of the contract and assignment, defendant entered upon the land and drilled a well. Plaintiffs contend that certain oil-bearing sand was penetrated and oil rose in the well in two hours about 300 feet. It is further contended that various oil-bearing strata were discovered in the Viola lime and in the Hunton lime, as disclosed by the cuttings taken from the well and delivered to defendant's geologist; that much saturation was found in these oil-bearing formations and that by reason thereof defendant knew that said well could easily be made highly productive, but, instead of informing plaintiffs of the true conditions discovered in the drilling of the well, defendant company, knowingly and with the intention of defrauding plaintiffs, drilled through the oil-bearing formations into salt water and immediately commenced negotiations with plaintiffs to buy their interests in the lease, telling them in effect that the well was a water well and would produce only a small quantity of oil. Plaintiffs alleged and testified that they had confidence in H. L. Blackstock and believed the representations made by him, and by reason thereof, on January 6, 1936, sold their interests in the lease to the defendant company for the sum of $5,000 each when as a matter of fact at that time the interests of the plaintiffs were worth the sum of $100,000 each.

It appears that immediately after the purchase of the interests of plaintiffs, defendant acidized the well, which treatment consists of injecting large quantities of hydrochloric acid into the lime formations which have shown oil saturation. Plaintiffs allege that after said acidization of the well, it showed a potential production of approximately 4,000 barrels per day. Plaintiffs further allege that there has been 150,000 barrels of oil, at the market value of not less than $1.25 per barrel, produced from the lease. After tendering back to the defendant the sum of $5,000 each, the consideration received for their interests, plaintiffs asked for a cancellation of the conveyances on the ground of misrepresentation and fraud, and for an accounting.

L. M. Kaiser and J. A. Bracken did not convey their interests in the lease to defendant.

Defendant denies the various allegations of misrepresentation and fraud and claims

that a full disclosure was made to the plaintiffs of the true facts concerning the condition of the well and the possible value of the lease as of the date of the purchase of the plaintiffs' interests.

Upon the issue of misrepresentation and fraud, the following authorities are applicable:

"The relation between the parties to a joint adventure is fiduciary in its character, and requires the utmost good faith in all the dealings of the parties with each other." Cassidy v. Gould, 86 Okla. 217, 208 P. 780.

"Where the parties stand in the relationship of trust and confidence, and the party in whom the confidence is reposed obtains an apparent advantage over the other in a transaction between them, such transaction is presumed to be void, and the burden of proof is upon the party who seeks to support it to show by clear proof that he has taken no advantage of his influence and that the transaction is fair and conscientious." McDaniels v. Schroeder, 128 Okla. 91, 261 P. 224.

"While equity does not deny the possibility of valid transactions between parties where a fiduciary relationship exists, yet, because every such relation implies a condition of superiority held by one of the parties over the other, in every transaction between them by which the superior party obtains a possible benefit, equity raises a presumption against its validity, and casts upon that party the burden of proving affirmatively its compliance with the equitable requisites, and of thereby overcoming the presumption. The broad principle on which the court acts in cases of this description is that wherever there exists such a confidence, of whatever character that confidence may be, as enables the person in which confidence or trust is reposed to exert influence over the person trusting him, the court will not allow any transaction between the parties to stand, unless there has been the fullest and fairest explanation and communication of every particular resting in the breast of the one who seeks to establish a contract with the person so trusting him." McDaniels v. Schroeder. supra (quoting from Logan v. Brown, 20 Okla. 334, 95 P. 441, 20 L. R. A. (N. S.) 298. See, also, Parker v. Parker, 75 Okla. 234, 182 P. 697, 11 A. L. R. 720; Moore v. Moore, 167 Okla. 365, 29 P.2d 961; Rollison v. Muir, 163 Okla. 266, 21 P.2d 1062; Lewis v. Schafer, 163 Okla. 94, 20 P.2d 1048).

"The gist of a fraudulent ·'misrepresentation' is the producing of a false impression upon the mind of the other party, and if this result is actually accomplished, the means of accomplishing it are immaterial." Wilson v. Rentie, 124 Okla. 37, 254 P. 64.

· "A duty to speak may arise from partial disclosure, the speaker being under a duty to say nothing or tell the whole truth. One conveying a false impression by the disclosure of some facts and the concealment of others is guilty of fraud, even though his statement is true as far as it goes, since such concealment is in effect a false representation that what is disclosed is the whole truth." Berry v. Stevens, 168 Okla. 124, 31 P.2d 950 (quoting from 26 C. J. 1074, para. 17).

By virtue of the similarity of the relationship between parties to a joint venture to a partnership, the following quotation from the case of Patrick v. Bowman, 149 U. S. 411, 13 S. Ct. 811, 37 L. Ed. 790, is pertinent to the proposition presented. We quote from the body of the opinion as follows:

"Where one partner is present in sole charge of the business, while the other is at a distance, in order to sustain a sale of the absent partner's interest, it must be made to appear that the price paid approximates a fair consideration for the thing purchased, and that all the information in the possession of the purchaser necessary to enable the seller to form a sound judgment of the value of what he sells, should be communicated by· the buyer to him."

It is the contention of plaintiffs that defendant is guilty of deliberate fraud against them in that he purposely drilled the well through certain paying oil formations and into salt water, then informed them that they had nothing but salt water in the well, which representation was contrary to the actual facts. It is not necessary, in order to sustain the judgment of the trial court, that plaintiffs show the commission of specific fraudulent acts on the part of defendant. Under the authorities hereinabove cited, it was his duty to give them full and complete information regarding the condition of the well and the prospects for completing the same as a producer. No specific findings of fact were entered by the trial court, but the general finding in favor of plaintiffs includes such specific findings as are necessary to. sustain the general finding. This includes a finding that defendant did not discharge in full the duty devolving upon it in its fiduciary relation to plaintiffs. Such finding is not against the clear weight of the evidence. The evidence discloses that the cuttings taken from the well showed 35.2 feet of oil saturation in the Hunton lime and 58.8 feet of oil saturation in the Viola lime. It is further shown that H. L. Blackstock was a pioneer in the use of acid; that there had been considerable use of acid in the Fitts pool. There is further evidence to the effect that the test was not complete until the saturated lime formations were acidized. It is further shown that while plaintiffs had some slight experience in oil production in

Texas, they were without knowledge or experience in the use of acid. Evidence was offered on behalf of plaintiffs that the value of the lease as of January 6, 1936, was in excess of $500,000. On various issues of fact the evidence was conflicting, but we cannot say that the judgment of the trial court is clearly contrary to the weight thereof.

Defendant's second proposition is stated as follows:

"Plaintiffs waited from January 6, 1936, to August 6, 1936, before bringing suit. They waited until the value of the property had been established by defendant at a cost of exceeding $84,000, and are barred by their laches and are not entitled to any equitable relief."

In support of this proposition it is alleged that on May 2, 1936, defendant completed a second well on the lease which had a potential production of about 3,935 barrels per day; that on June 3, 1936, defendant completed a third well on the lease which had a potential production of about 2,526 barrels per day; that the plaintiffs knew or should have known that these wells were commercial producers and knew that defendant was expending large sums of money in the development of said lease, but, notwithstanding said knowledge, plaintiffs made no claim to an interest in the lease until August 6, 1936, the date of filing this suit.

It is the general rule in this jurisdiction that the question of whether a claim is barred by laches must be determined by the facts and circumstances in each case and according to right and justice; that laches in legal significance is not mere delay, but delay that works disadvantage to another. Harn v. Smith, 85 Okla. 137, 204 P. 642; Cassidy v. Gould, 86 Okla. 217, 208 P. 780; Parks v. Classen Co., 156 Okla. 43, 9 P.2d 432.

The record in this case discloses an agreement on the part of counsel that any accounting ordered by this court or the trial court may be rendered upon the same basis as the payments heretofore made to Bracken and Kaiser, whose individual interests in the lease are the same as the interests transferred from plaintiffs to defendant. The record fails to disclose that the failure of plaintiffs to institute an action at an earlier date has caused defendant to change its position in any manner. In view of the fact that defendant failed to show disadvantage or detriment by the failure of plaintiffs to institute their action at an earlier date, there is no merit in the contention regarding laches.

Defendant has cited numerous authorities to the effect that cancellation of a conveyance is an exercise of the most extraordinary power of a court of equity and should not be exercised except in a clear case. We have given due consideration to these authorities. In the instant case the trial court found that there was a breach of a fiduciary relationship, and we are not convinced that such finding is against the clear weight of the evidence.

The judgments are affirmed.

BAYLESS, C. J., WELCH, V. C. J., and RILEY, CORN, GIBSON, HURST, and DANNER, JJ., and BILLINGSLEY, Special Justice, concur.

DAVISON, J., being disqualified, Hon. Walter A. Billingsley was appointed by the Governor as Special Justice to sit in his stead.