## WILCOX OIL CO. v. EMPIRE OIL OF TEXAS.

## EMPIRE OIL OF TEXAS v. WILCOX OIL CO.

### No. 13701.

United States Court of Appeals Fifth Circuit.

April 3, 1952.

George S. Terry, Fritz L. Lyne, Dallas, Tex., Horace B. Clay, Tulsa, Okl., for appellant and cross-appellee.

Larry DeBogory, Dallas, Tex., for appellee and cross-appellant.

Before BORAH, RUSSELL, and RIVES, Circuit Judges.

RUSSELL, Circuit Judge.

Wilcox Oil Company and Empire Oil of Texas entered into a written contract by the terms of which Wilcox became obligated to drill a test well for oil and gas on certain property leased to Empire and located in Beckham County, Oklahoma. The well was to be drilled to the depth of 10,-500 feet unless oil or gas in paying quantities or impenetrable formations were encountered at a lesser depth. The cost of drilling the well was to be paid by Wilcox. The agreement further provided that in the event the parties should mutually decide to "run an oil string of casing, then Empire, at its sole cost and expense," would deliver to Wilcox certain material, including specified casings, and, that upon delivery, Wilcox would become vested with a one-half undivided interest in the material accepted. In addition to mutual covenants not material to this resume, Empire, in consideration of the obligations assumed by Wilcox, agreed to assign a one-half undivided interest in the lease to Wilcox, together with a dry hole letter from Sinclair Oil & Gas Company for $20,000, and a dry hole letter from Empire for $55,000.

After the well had been drilled to a depth of 10,320 feet, Wilcox notified Empire by letter dated April 21st, 1950, that the prospects of striking gas or oil were not good, but in the event that subsequent drilling should indicate that it would become necessary to run casing, Empire would be expected to furnish the casing without delay. Should there be delay in furnishing the casing, the letter advised, Empire would become obligated to pay certain daily charges as a result of such delay. There is considerable dispute in the evidence as to the events which followed. Holden, testifying for Wilcox, stated that he discussed the furnishing of the casing with Ulmer, manager of Empire, on April 25th; Ulmer made arrangements for the purchase and delivery of the casing, which was de-

livered to the site of the well on April 26th, and agreed for it to be inserted in the well. The casing was run into the well, starting about noon, April 26th, and finishing about 1:30 a. m., April 27th. Ulmer admitted that he discussed the running of the casing with Holden, purchased it and made arrangement for delivery of it, but denied that he consented for it to be used. It is undisputed, however, that on April 25th, Empire, through Ulmer, sent a telegram to Wilcox advising that it would not agree to run the casing at that time, but would furnish the casing under condition that in the case of a dry hole Wilcox would be charged with the cost thereof. This telegram was received by Wilcox prior to the time the casing was delivered to it and, of course, before any of the casing was run into the well.

The contract depth of 10,500 feet was reached in the latter part of April, or in early May, 1950. It was then agreed by the parties that drilling would be continued and Empire would pay $150 per day for fifteen days additional drilling. At the expiration of the fifteen day period, on May 21, 1950, Wilcox continued to drill the well until July 13, 1950, and finally, on August 22, 1950, plugged the well as a dry hole. During the period between May 21st and July 13th, Wilcox and Empire on several occasions discussed the further deepening of the well; however, they could not arrive at an agreement, and although Empire was aware of the fact that Wilcox was continuing the drilling operations, it never expressly authorized such further operations or agreed to share the cost of them. At a conference held on June 12th, Empire offered to pay $200 a day for an additional 20 days of drilling, but this offer was rejected by Wilcox. Thereafter Empire withdrew the offer and advised Wilcox that it would not participate in further deepening the well, and "what they [Wilcox] did from that depth on, was purely their own workings." On June 23rd, another conference was held and again Empire declined to make any further contributions, but advised Wilcox that, "We are going to stand by our contract just the way it is. You gentlemen have our consent to go down as deep as you want to at your own risk, and at your own expense * * *."

After further demands failed to produce results sought by Wilcox, and Empire had failed on demand to make any payment to Wilcox, the latter initiated this action to recover, (1) the $55,000 provided for in Empire's dry hole letter, (2) $2,250 for 15 days operations at $150 per day under the extension agreement, (3) $31,985.86 for Empire's share of the costs beyond the 15 day extension,[1] and (4) reasonable attorneys' fees for the recovery of the $31,985.-86 claimed to be due. (On this appeal the amount of $31,985.86 has been reduced to $25,343.69, the amount claimed to have been proved by the evidence to be due.) Empire answered denying liability and filed a cross claim which, among other claims, alleged that Wilcox had unlawfully converted the casing and was therefore liable to Empire for money damages.

The trial Court awarded judgment to Wilcox for the the amount claimed to be due under the dry hole letter ($55,000), the amount claimed to be due under the 15 day extension agreement ($2,250), and attorneys' fees in the amount of $2,500. Recovery was denied to Wilcox for the expenses incurred by it after the expiration of the 15 day extension agreement. In respect to the casing, the Court found as a fact that the parties did not agree to run the casing and awarded the casing, which had been recovered from the well, to Empire *in toto*. Interest on the award was to run from the date of the judgment.

Wilcox prosecutes this appeal from that judgment, contending that the trial Court erred in failing to ward judgment for the $25,343.69 and interest thereon from the date the well was plugged; in failing to award interest on the sums of $55,000 and $2,250 from the alleged due date of each sum; and in failing to award it title to one-half of all casing run into the well. Empire has appealed from the judgment insofar as it awarded attorneys' fees to Wilcox.

1. Wilcox also prayed for interest at the rate of six percent per annum from August 23, 1950, on items (1), (2) and (3).

Since the contract was entered into in Oklahoma and was performed in that State, the substantive rights of the parties are governed by the law of Oklahoma. The trial Court denominated the relationship between the parties as that of joint adventurers. Wilcox contends, and Empire denies, that there is no legal distinction between this designation and that of mining partners. Inasmuch as the Supreme Court of Oklahoma has held that where a joint adventure has been entered into, the law of partnership applies between the parties thereto and that their liabilities as between themselves are similar to those of partners, Commercial Lumber Co. v. Nelson, 181 Okl. 122, 72 P.2d 829; Vilbig Construction Co. v. Whitham, 194 Okl. 460, 152 P.2d 916; Blackstock Oil Co. v. Caston, 184 Okl. 489, 87 P.2d 1087; Boles v. Akers, 116 Okl. 266, 244 P. 182, it is unnecessary to this opinion to resolve this conflict. This is particularly true under the facts of this case, since both parties are relying upon their rights as derived from the contract and the interests of third parties are not at issue.

It cannot be disputed that a member of a mining partnership, or joint adventure, who has advanced more than his share of the money required to accomplish the venture pursued is entitled to contribution against his co-partner, or co-adventurer, provided such expenditures were made in accordance with the agreement between the parties, express or implied. Wertzberger v. McJunkin, 171 Okl. 528, 43 P.2d 729. However, the rights, duties and obligations of such parties depend primarily upon the terms of the contract by which they assumed the relationship, and their obligations may be of unequal extent, if their agreement so provides. When the parties have not indicated a contrary intention, the rule of equality prevails. Parties to a contract, whether partners or joint adventurers, may limit their respective profits and provide which particular part of the expenses each should bear. See Sand Springs Home v. Dail, 187 Okl. 431, 103 P. 2d 524; E. D. Bedwell Coal Co. v. State Industrial Comm., 157 Okl. 227, 232, 11 P. 2d 527.

In this case, Wilcox is attempting to recover one-half of the expenses incurred by it through its continued operations after the expiration of the drilling contract between the parties. The amended agreement, as the evidence discloses, provided that drilling operations would cease on May 21st, 1950. Empire refused, and continued to refuse, Wilcox's proposals that the operations be continued. Although at one time Empire expressed a willingness to enter into an agreement for additional deepening of the well, this never advanced beyond the stage of negotiations. The liability of Empire was limited by the provisions of the amended contract between the parties, and the finding of the trial Court which rejected the claim of Wilcox for recovery of expenses incurred after the date of the termination of the contract is not erroneous.

Relying upon Oklahoma Statutes 1941, Title 23, §§ 6 and 22,[2] and cases cited, Wilcox contends that the trial Court erred in failing to include in its judgment an award of interest on the sums of $55,000 and $2,250,[3] from the due dates thereof to March 14, 1951, the date of judgment. It is well settled in Oklahoma jurisprudence that interest on an unliquidated account or claim is not recoverable where it is necessary for a judgment to be had to ascertain the amount thereof. Deardorf v. Rosen-

---

2. Title 23, § 6, Oklahoma Statutes 1941, provides: "Any person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt."

Title 23, § 22, Oklahoma Statutes 1941,

provides: "The detriment caused by the breach of an obligation to pay money only is deemed to be the amount due by the terms of the obligation, with interest thereon."

3. Wilcox also contended for interest on the additional amount of $25,343.69; however, this item has been disposed of with the determination that Wilcox is not entitled to recover the principal sum claimed to be due.

busch, 201 Okl. 420, 206 P.2d 996; Dick v. Essary, 201 Okl. 196, 203 P.2d 715; City of Chickasha v. Hollinsworth, 56 Okl. 341, 155 P. 859; Robberson Steel Co. v. Harrell, 10 Cir., 177 F.2d 12, 17, and cases cited. Wilcox contends that this rule is not applicable in the instant case, since the claim is liquidated, but the facts do not support this view. In the case of Dick v. Essary, supra [201 Okl. 196, 203 P.2d 717] the definition of a "liquidated account" was accepted as being "one the amount of which is agreed upon by the parties or fixed by operation of law" and a "liquidated debt" was said to be such "when it is certain what is due and how much is due." In concluding that the demands of both parties were clearly unliquidated and that no interest should have been allowed prior to the judgment fixing the amount due, the Supreme Court of Oklahoma observed that no agreement as to the due date was claimed by either party; the amount of work accomplished under the contract was in dispute, as were certain credits; and that the defendant claimed damages for breach of the contract in excess of the sum demanded under the contract.

■ In this case the record does not disclose that there was an agreement between the parties as to the due date of the indebtedness, nor does it appear that a demand for payment was made on any specific date prior to the filing of suit. A *bona fide* dispute existed as to whether any sum was due; Wilcox claiming a sum greatly in excess of the amount determined to be due and Empire asserting a claim for damages for breach of contract and conversion of the casing in excess of the sum demanded by Wilcox. Under the facts of this case it is clear that the claim asserted was unliquidated and comes within the purview of the general rule pertaining to such claims, and therefore it was not error to deny the claim for interest.

■ The claim of Wilcox to one-half of the casing which was run into the well and later recovered is without support. Wilcox does not seriously attack the finding of the trial Court that there was never an agreement to run the casing in the well, but contends that the contract provided that a one-half undivided interest in the casing would become vested in it on "delivery", whether or not Empire consented to use it. It is sufficient to say that the provision in question, considering the contract as a whole, is not susceptible to this construction, and the judgment of the trial Court on this point is supported by the evidence.

■ The foregoing disposes of the issues raised by Wilcox. By cross-appeal, Empire contends that the award of $2,500 as reasonable attorneys' fees was erroneous, because recovery of the claim upon which the prayer for attorneys' fees was predicated was denied. Wilcox has not replied to this cross-appeal. Inasmuch as the record shows that attorneys' fees were sought only in connection with the claim asserted for damages which was denied by the trial Court, the award of attorneys' fees is clearly erroneous and should be set aside. We give direction that this be done, and the judgment, as thus modified, is affirmed.

Judgment affirmed.