## HOGAN et al. v. LEEPER.

### No. 2783.   Opinion Filed June 19, 1913.

#### (133 Pac. 190.)

1. **JURY—Right to Jury Trial—Deed of Trust—Cancellation.** The defendant in a suit to cancel a deed of trust, alleged to have been executed under duress, is not entitled to a jury trial, though the effort of the cancellation will be to restore the maker of the instrument to the control of land described in said instrument.

2. **TRIAL—Nature of Action—Verdict of Jury.** A suit to cancel an instrument conveying land in trust is an equitable suit, and the verdict of a jury is merely advisory to the court, and the court may make different findings if satisfied that different findings are required by the evidence.

3. **TRUSTS—Deed of Trust—Validity—Duress.** The evidence showed that a son came to the city of his father's residence, employed a lawyer, and had the lawyer to prepare a deed of trust conveying all of his father's real estate to a trustee for the life of his father, with directions to apply $40 per month of the income to the support of the father and the balance to the expenses of the trust and payment of certain mortgages on some of the property. The father was then requested to go to the lawyer's office and was there requested to sign the deed of trust and was told that if he did not proceedings would be commenced to appoint a guardian for him. He then signed the instrument without having had time or opportunity to reflect or consult friends or counsel of his own choosing, saying at the time that he was signing his life away. Held, that the instrument should be cancelled.

4. **INSANE PERSONS—Appointment of Guardian—Grounds.** The fact that a man 76 years of age desires to marry is not sufficient ground for the appointment of a guardian of his property.

5. **TRUSTS—Trust Deed—Execution—Presumption.** When circumstances, such as are related in paragraph 3 above are shown conclusively or admitted by the party procuring the execution of

the instrument, the presumption arises that the instrument was obtained through duress and undue influence, and the burden is then upon the party procuring the execution of the instrument to show that the execution was not so procured.

(Syllabus by Rosser, C.)

*Error from District Court, Oklahoma County;*
*George W. Clark, Judge.*

Action by J. G. Leeper, as executor of Thomas J. Bailey deceased, against Daniel W. Hogan and others. Judgment for plaintiff, and defendants bring error. Affirmed.

*Fred S. Caldwell* and *Chas. H. Garnett,* for plaintiffs in error.

*Vaught & Ready,* for defendant in error.

Opinion by ROSSER, C. This was an action by Thomas J. Bailey, now deceased, against Daniel W. Hogan, Samuel E. Bailey, Dora L. Adams, Mamie L. Huntley, John A. Bailey, Thomas A. Bailey, and Leigh M. Bailey. There was a judgment for plaintiff, and defendants appeal.

The plaintiff has died since the trial, and the case has been revived by making J. G. Leeper, executor of his will, the defendant in error here. The plaintiff, Thomas J. Bailey, had been married a number of years ago, and the defendants named, except Hogan, are his children by the wife of his youth. These children grew up and his first wife died and he married a second time. At the opening of the territory of Oklahoma he came to Oklahoma City with his second wife and one or two of his younger children and established a home here. He lived in a tent for a time and endured other hardships to acquire and hold property until at the time of the transaction involved in this case he had accumulated property valued by different persons at from $25,000 to $75,000. His second wife died. His children established homes for themselves and he began boarding. For three or four years he boarded or made his home with a woman named Scantlin, who was a married woman living apart from her husband. She lived in one of his houses,.

and their relations were very friendly, but from the testimony not more than friendly. Some of his daughters visited him and it seems that they became apprehensive that this woman would induce him to give her some of his property. At any rate, after some correspondence among the children, the defendant Leigh M. Bailey came to Oklahoma City and employed a lawyer to draw a deed of trust. He remained in the city two or three days consulting with his lawyer and with some of plaintiff's neighbors, who were busying themselves in the matter. He had the records examined, found out what property his father had and its condition, and had his lawyer to prepare the deed of trust involved here. His lawyer telephoned the plaintiff to come to his office and see him on a matter of interest to the plaintiff. The plaintiff started to his office to see him and was met by his son, Leigh M. Bailey, who until then had not permitted him to know that he (the son) was in the city, and who accompanied him back to the lawyer's office. When he reached there the lawyer informed him that he (the lawyer) had been retained by Leigh M. Bailey to look up the condition of his property; that they believed Mrs. Scantlin was trying to get his property; and that if he continued to live with her and did not put his property where she could not get it, in time she would get it. Bailey replied that she had not yet gotten any considerable part of his property and that he did not intend for her to have it, and thought he could protect himself. He was then asked what disposition he wanted to make of his property, when he died, and he stated that he wanted his six children to have it and also stated that he had a will. He was then told that a will was uncertain, and that the woman might get another will. The lawyer then showed him the deed and explained it to him. The plaintiff testified that the lawyer and his son threatened to have him and the Scantlin woman arrested unless he signed the deed of trust. The testimony of his son and the lawyer, however, is that they told him that if he did not sign the deed of trust they would

Vol. 37—42.

.have a guardian appointed for him, and their statement is ac-
·cepted as correct. After some discussion, at the request of the
·plaintiff, the lawyer withdrew from the room and the plaintiff
talked the matter over with his son. The lawyer returned to
the room and told his son to make him sign the deed of trust
just as it was. After further conversation he signed the deed
of trust. When he did so, according to his and his son's state-
ment, hé began crying and stated that he had signed his life
away. He went with the trustee, however, and pointed out
the property and introduced him to the tenants in the prop-
erty with the instruction that they pay the trustee the rent
from that time on. A short time after he signed the deed of
trust he became dissatisfied and began writing to his children
and asked them to release him from its provisions and threat-
·ened suit if they did not. There is absolutely no evidence that
Mrs. Scantlin was trying to get his property, except that one
witness, who had interested herself a good deal in the matter,
testified that Bailey told her upon one occasion that the woman
had obtained $15 from him. She testified that he was very
much dissatisfied on that account and stated to the witness that
he was going to move. The evidence shows that the woman
waited upon him during his sickness and was kind to him in
every way, and that his children expressed themselves as be-
ing satisfied with her treatment of him at the time they visited
him when he was boarding with her. The case was tried to a
jury, and there was a verdict for the defendants. The court set
aside the verdict upon motion and rendered judgment for the
·plaintiff.

The defendants contend that as the trustee was in posses-
·sion of the plaintiff's property he was entitled to a jury trial,
and that the court erred in disregarding the verdict of the
jury and rendering judgment in accordance with his views of
the law and the evidence. They based their contention upon
the provisions of the Code with reference to trial by jury in
ejectment cases and the further provision of section 6122, Comp.
Laws 1909, in substance, that an equitable title will support the

action of ejectment. The contention is not well founded. This was not an action in ejectment. Plaintiff was not suing to recover possession. He was suing to cancel a deed of trust. The possession of the property was only incidentally involved. The purpose of the suit was to cancel the deed and remove the trustee. It was not a suit to recover specific real property.

The suit to cancel the deed was an equitable one, and defendants were not entitled to a jury trial. *Mosier v. Walter,* 17 Okla. 305, 87 Pac. 877; *Watson v. Borah, ante,* 132 Pac. 347; *Barnes v. Lynch,* 9 Okla. 156, 59 Pac. 995; *Richardson Dry Goods Co. v. Hockaday,* 12 Okla. 546, 73 Pac. 957; *Murray v. Snowder,* 25 Okla. 421, 106 Pac. 645; *Apache State Bank v. Daniels,* 32 Okla. 121, 121 Pac. 237, 40 L. R. A. (N. S.) 901; *Wat-tah-noh-zhe v. Moore,* 36 Okla. 631, 129 Pac. 877. See, also, *Evans v. McConnell,* 99 Iowa, 326, 63 N. W. 570, 68 N. W. 790; *Martin v. Martin,* 44 Kan. 295, 24 Pac. 418; *Hospital Co. v. Philippi,* 82 Kan. 64, 107 Pac. 530, 30 L. R. A. (N. S.) 194; *Mesenburg v. Dunn,* 125 Cal. 222, 57 Pac. 887. The foregoing decisions of this court also hold that in an equity case a verdict of a jury is advisory only, and that the court may disregard the verdict if he is of a different opinion. This does not mean that the court should ignore the verdict in an equity case. When a jury has been impaneled and a verdict rendered in such cases, the court should give the verdict consideration; but if after due consideration he is unable to agree with the jury, and is of the opinion that a different finding is the correct one, it is his duty, notwithstanding the verdict of the jury, to enter what in his opinion is a correct judgment.

The question is then whether the evidence supports the judgment. It does. In the first place there was no consideration for the deed of trust. Thomas J. Bailey was giving up the control of property which he had accumulated by his own exertions and paying another person a consideration to look after the property when he was himself entirely competent to superintend it. It is true the compensation paid the trustee

was not more than he earned, but the trusteeship was not necessary. There was no proof offered or attempted to be offered that Bailey was not managing his property well enough. It is true there were some small mortgages on some of it, but there is no proof at all that he had squandered or was squandering any money. One of the mortgages was for part of the purchase price of the property which he had bought a short time before the transaction involved here. If the mere giving of a mortgage subjected the giver to having a trustee appointed over his property, many people of the highest standing socially, professionally, and in a business way, and even some in official life, would be required to surrender the control of their possession to the hands of trustees. A little bad management or an occasional unprofitable business transaction, or even an occasional useless expenditure of money, is not sufficient ground upon which to take from a man the control of his property. If the deed was not procured by technical duress, at least it was not the voluntary act of Thomas J. Bailey.

Leigh M. Bailey, the son, came to Oklahoma City, but instead of going to his father he counseled with some people named Yeager and acting under their advice employed a lawyer. Evidently he did not believe there was immediate danger that the woman would obtain the property for he remained in the city three days without speaking to his father. During that time he saw his father, but his filial affection was of such a lukewarm nature that he got away to prevent his father from seeing him. When the deed of trust was ready, he had his lawyer telephone to his father to come to the office and then went out and met the old man and guided him to the office. When the old man reached the office, his son and his counsel unfolded the purpose for which he had been requested to come. That he demurred to surrendering, without reason and without consideration, the control of his property appears from the proof. There is a conflict in the testimony as to what was said. He says that his son and his counsel told him that he would be arrested, charged with improper relations with the woman, un-

less he signed the instrument. They deny this and say that they told him that if he did not sign application would be made to the court to have a guardian appointed for him. The effect from either threat would be about the same. If they did believe he was so incompetent as to need a guardian or committee, it seems inconsistent that they should have been willing for him to sign a deed of trust, surrendering the control of the results of a lifetime of labor, a transaction which certainly required the complete use of his faculties. Their attitude apparently was that if the old man would sign the deed he was competent, but if he did not he needed a guardian. When he was confronted with the alternative of delivering his property to the care of a stranger or being arrested or having his child the moving party in an effort to show him incapable of attending to his affairs, he asked for an opportunity to talk privately with his son.

"And he called his son Joseph, and said unto him: If now I have found grace in thy sight, put, I pray thee, thy hand under my thigh, and deal kindly and truly with me."

When the attorney retired Bailey asked his son why he had not come to him instead of going to a lawyer. His son did not answer; he made no appeal on the ground of affection. He offered no time for advice or reflection but, though dealing with his father, stood coldly on the advice of his lawyer. The lawyer returned to the room and the plaintiff signed the deed, saying, with emotion, that he had signed his life away. The whole transaction only took a short time. He had no opportunity to reflect and had no opportunity to consult a lawyer of his own choosing. The fact that he had no opportunity for reflection and advice is a strong circumstance in the case. *Miller v. Simonds,* 72 Mo. 669; *Davis v. Strange,* 86 Va. 793, 11 S. E. 406, 8 L. R. A. 261; Story's Eq. Juris. 251. The father undoubtedly had confidence in his son.

"Whenever there exists between parties confidence on the one hand and influence on the other, from whatever cause they may spring, equity requires in all dealings between them the highest degree of good faith on the part of him in whom the

confidence is reposed. If a conveyance is executed by the other in his favor, the burden rests upon him to prove that it was not procured by means of such confidence and influence. It is his duty, before accepting the conveyance, to see that the grantor has disinterested advice and full information." (*McClure v. Lewis,* 72 Mo. 314.)

See, also, *Parker v. Parker,* 45 N. J. Eq. 224, 16 Atl. 537; *Snyder v. Snyder,* 131 Mich. 658, 92 N. W. 353.

In the case of *Bowe v. Bowe,* 42 Mich. 195, 3 N. W. 843, which was a transaction between a father and son, in which the son was the beneficiary, the court said:

"It is not necessary, under such circumstances, that the court should be satisfied the case was one of fraud, or even of undue influence; it is enough if the defendant had dealt oppressively with his parents, and that the consideration for the mortgage was either wanting or was inadequate."

"Influence obtained by flattery, importunity, superiority of will, mind, or character, or by what art soever that human thought, ingenuity, or cunning may employ, which would give dominion over the will of the testator to such an extent as to destroy the free agency, or constrain him to do against his will what he is unable to refuse, is such an inuflence as the law condemns as undue, when exercised by any one immediately over the testamentary act, whether by direction or indirection." (*In re Disbrow's Estate,* 58 Mich. 96, 24 N. W. 624.)

This statement of the law as applied to wills is not only the law with reference to wills but with reference to conveyance contract which a party might enter into.

The evidence upon the part of the defendants in this case scarcely attempts to controvert the allegation that the plaintiff executed the deed of trust under a species of coercion. A considerable portion of the evidence is directed to the proposition that Thomas J. Bailey was infatuated with a woman, and it was necessary to protect him, but the evidence does not show that any improper relations existed between them or that she was making any effort to secure his property. They had been together for a considerable length of time and there is no proof that she ever sought to have him convey any part of his prop-

erty to her. It does appear that he advanced her a few hundred dollars to engage in a small business. But the evidence tends to show that she was using the money in the business, and there is nothing in the evidence to show that the business was not successful. She, or the husband she later married, bought out his interest in the business and paid him for it. The proof does show that he complained to a neighbor once that she had gotten $15 from him, and that she was costing him too much. This circumstance strengthens his case. If he complained of giving her $15 while pressing his suit, it is likely he would have become very penurious later.

The evidence does tend to show that he wanted to marry the woman. His son probably objected to that. He probably believed it was right to prevent the marriage. There is no doubt though that he was actuated largely by a desire to secure the old man's property to himself and his brothers and sisters. Old men try to control the marriages of their children. Children sometimes think that their surviving parent must get their consent before embarking for another voyage on the sea of matrimony. Usually the efforts of both parents and children are futile when directed toward preventing the other from marriage. Children have no right to act as guardians for a parent if the parent is in possession of his faculties and possessed of means sufficient for his support.

It is claimed the old man was infatuated with the woman. The writer of this opinion knows no reason why an old man has not the same right to be infatuated with a woman as a 16-year-old boy or a 30-year-old man. Men of all ages and conditions are continually becoming infatuated with all sorts of women, and unless the infatuation goes to the extent of destroying the freedom of will and reason, it furnishes absolutely no ground for the appointment of a guardian. This old man had raised a family which had scattered out over the world and left him alone. If he could find solace with a woman who would give him good treatment in his declining years, there is absolutely no reason in law, equity, or morals why he should not

do so and even bestow upon her his property if, acting in full exercise of his reason, he desired to do so. This deed of trust was obtained for the purpose of preventing him from disposing of his own property, and undue influence and coercion was brought to bear to induce him to sign it.

It is claimed the court erred in holding that the burden of proof was on the defendants to show that the deed of trust was not obtained by force or undue influence or duress. The burden is always on the party alleging one or all of these grounds of cancellation to prove them or some of them, and some of the *language* of the court was not an accurate statement of the law, but a fair interpretation of his decision is that when it was shown that Bailey was called to the office of a stranger to him, suddenly presented with the deed of trust, and by his son and his son's lawyer given the alternative of signing the instrument or having guardianship proceedings begun, and that he signed it with the statement with tears in his eyes that he was signing his life away, the plaintiff had made a *prima facie* case that must be met by proof on the part of the defendant. That this was the correct view is supported by natural reason as well as by several authorities cited above.

The judgment should be affirmed.

By the Court: It is so ordered.