**JOHNSTON, Adm'r, et al. v. McCRAY.**

No. 16610—Opinion Filed March 22, 1927.

Rehearing Denied April 12, 1927.

(Syllabus.)

**Contracts—Deeds—Cancellation — Presumption of Fraud from Fiduciary Relation and Grantor's Infirmity of Age—Burden of Proof.**

Where, upon proper pleadings, it is shown that a contract transferring property was obtained from a person of advanced years, enfeebled both in body and mind, by a person occupying a fiduciary relationship to the grantor, a presumption of fraud arises, and unless it is successfully rebutted by showing absolute fairness and good conscience in the transaction, and clear understanding thereof by the grantor, a court of equity will vacate and set aside such deed or contract, and adjudge the property described therein to be in the same legal status as if such contract had never been executed. Held. that defendant's evidence did not sustain this burden in the instant case.

Error from District Court, Noble County; Charles Swindall, Assigned Judge.

Action by Henry S. Johnston, administrator of the estate of Arthur McCray, and others against Lizzie C. McCray. Judgment for defendant, and plaintiffs bring error. Reversed.

Cress & Tebbe, for plaintiffs in error.

Lowry Law Offices and W. M. Bowles, for defendant in error.

BRANSON, C. J.    Error is presented herein from the district court of Noble county. The plaintiffs in error were the plaintiffs. The defendant prevailed in the trial court, and the plaintiffs appeal. The plaintiffs are the administrator and five of the surviving children of Arthur McCray, deceased. The administrator and the said surviving children sued Lizzie C. McCray, the surviving widow. The cause was pleaded in equity. The relief sought was a judgment vacating. setting aside, and holding for naught a certain instrument which is referred to as a "contract of separation," and that the title to the property which said instrument on its face purported to convey to the defendant be quieted in the plaintiffs.

The said so-called "contract of separation" bore date of June 4, 1923.    It was signed by Arthur McCray, and acknowledged by him before a notary public on said date. While so designated, the heart of the said instrument is in fact a conveyance of real estate as well as personal property; for that it recites, among its numerous other provisions: "That he (Arthur McCray) does hereby and by these presents give, grant, sell and convey unto the said Lizzie C. McCray, * * *"—followed by a description of certain real estate alleged in the petition and shown by the evidence to be of considerable value, and also the household furniture, excepting only a piano. which the said instrument purported to convey to one Thelma Ferguson, daughter of the defendant and step-daughter of the said Arthur McCray.

The petition charges, as ground for the relief sought, that the said decedent was an aged man, and that he had married defendant some 12 years prior to his death, she being a young woman. That the said decedent was possessed of considerable real property, by far the most valuable of which was that described in the said contract so executed as aforesaid; that for a long time prior to the date of the execution of said contract the said decedent had been in a failing condition, both as to body and mind, and for more than 18 months prior to the execution of the said instrument he had been confined to his bed, or, as his condition is

referred to in the record, "bed-ridden," suffering bodily infirmity. caused by an aggravated cancerous condition. That during said time, and particularly for a considerable period of time prior to the execution of said instrument, strong drugs had been administered to him, under direction of his physician, in order to alleviate the pain his condition caused. That during said time his mind had become so enfeebled that he was easily susceptible to influence, and that this mental condition was not only well known to the defendant, but she had designedly sought to take advantage of his said condition in order to secure the instrument here sought to be vacated, and that eventually she did secure the execution of the same on the date aforesaid.    It was executed Monday, and on the following Friday she left and separated entirely from the said decedent, taking with her the household furniture, with the exception of the bed on which the said Arthur McCray had been lying for months, and on the following Monday the said Arthur McCray departed this life.

Plaintiffs allege and charge, further. that by reason of this condition of the decedent, the procurement by the defendant of the said instrument was fraudulent as a matter of law, and should not be allowed to remain as a muniment of title on its face purporting to convey the property therein described to the defendant, but that equity should decree same without legal force and effect, and the title adjudged to be as if the said instrument had never been executed.

We deem it unnecessary to detail herein the evidence adduced on the trial in support of the allegations made in the petition, summarized as above set out. We do perceive, however, that a synopsis thereof should be given.    The details and the reasonable inference to be drawn therefrom could serve no useful purpose to the survivors, related either by blood or by affinity to the decedent.    Both they and their counsel are familiar therewith.

Many witnesses were introduced on behalf of the plaintiffs.    They were relatives, neighbors, friends, and acquaintances. as well as the decedent's physician.    Their cumulated evidence is to this effect:    That the said Arthur McCray was a man of advanced years; that the plaintiffs, other than the administrator, were his children of a former marriage; that the defendant was a young woman; that the decedent was possessed of considerable land and other property at the time of his marriage to the defendant, and that the defendant was possessed of no prop-

erty at time of marriage. That for many months prior to the date of the contract, the defendant had repeatedly made the statement that the decedent was losing his mind. That the decedent had on several occasions indicated his intention of committing suicide, and on more than one occasion had secured poison, apparently with the intention of taking his own life; that those well acquainted with him had observed a marked change in his mental condition, his attitude, actions, and conduct, from which they expressed the opinion that he was not competent mentally to understand the nature and effect of the instrument so executed. The physician who attended him testified that it had been necessary to administer to him drugs, which materially affected his nervous system, depressed his mental condition; one of which drugs was morphine. That the decedent was not only suffering from an aggravated cancerous condition, but from uric acid poisoning and toxemia which at times rendered him delirious. It was further shown that lawyers on different occasions had been sought by the defendant to come to the place and assist her in having this alleged contract executed, which was finally done on the date above set forth. The county treasurer of the county, who had been a resident near the decedent since 1893, testified that the defendant told him shortly before the execution of the said contract, in effect, that if she should call him, she wanted him (the witness) to hurry over, because McCray was going crazy, and that the witness replied that he did not believe that the decedent would be violent. That some six weeks before McCray's death, witness on one visit found him in a stupor, and that from the condition which he observed he did not think that the decedent was competent. Some 18 witnesses testified in substance and in effect as abbreviated above.

On the other hand, there was some evidence adduced from witnesses that, although he had been bed-ridden, and in the condition as plaintiff's witnesses testified, for 18 months, he was mentally capable of knowing the nature and effect of the document executed. Among them was one Mrs. Fosler, who was a particular friend of the defendant. She testified that she saw the deceased on Friday before his death on Monday, which was the day on which the defendant separated herself entirely from him, and that although he was on that date unable to speak to her, and that she was the last person to bid him good-bye, the defendant and her daughter Thelma having already told him good-bye, she admitted that the deceased was crying when the defendant left him on the said date, three days before his death.

The trial court instructed the jury, concluding as follows:

"Now, therefore, having the rule in mind relative as to what constitutes a want of mental capacity to execute a contract the court submits to you the following interrogatory: (1) Did Arthur McCray on the 4th day of June, 1923, have sufficient mental capacity to understand and carry in mind in a general way the nature and situation of his property, and his relation to those who naturally had some claim to his remembrance, and to those in whom and the things in which he had been prior thereto, and was at the time, chiefly interested?"

This interrogatory was answered by the jury by a unanimous verdict, "No."

The following was the second interrogatory submitted:

"Was Arthur McCray unduly influenced by his wife, Lizzie McCray, to execute the contract dated the 4th day of June, 1923, as undue influence is defined to you in this action?"

This was answered by the jury by a unanimous verdict, "Yes."

Notwithstanding these conclusions of the jury, which of course were merely advisory to the court, judgment was rendered for the defendant.

We are confronted here with more than one proposition of law. But under the record, we think, one well-settled proposition is controlling. This principle can be reduced briefly to this: Equity will not permit a grantee who has and does sustain the relation of trust and confidence to a grantor to profit by an instrument giving the grantee an advantage which the grantee would not otherwise have had. A court of equity will scrutinize such transaction and grant relief by vacating the instrument in the absence of proof on the part of the grantee of a convincing nature that in securing such instrument, the grantee acted in the utmost good faith, and did not abuse the confidential relationship or take advantage of the mental incapacity of the grantor, or his enfeebled state of mind.

In the case of Sands v. Sands, 112 Ill. 225, it is said:

"The rule is, where a person enfeebled in mind by disease or old age, is so placed as to be likely to be subjected to the influence of another, and makes a voluntary

disposition of property in favor of that person, the courts require proof of the fact that the donor understood the nature of the act, and that it was not done through the influence of the donee."

In the case of Wadell v. Lanier, 62 Ala. 349, the Supreme Court said:

"In all the variety of relations of life in which confidence is reposed and accepted, and dominion may be exercised by one person over another, the court will interfere and relieve against the contracts of conveyances, when they would abstain granting relief if no particular relation existed between the parties in which trust and confidence was reposed and accepted, and there was not any opportunity for an abuse of the confidence and the exercise of undue influence. Though in this class of cases there are often marks and traces of direct and positive fraud, of artifice, imposition, overreaching and unconscionable advantage, the principle on which the court proceeds in granting relief does not depend on the existence of such facts. Relief is granted, not because there is actual fraud, but, on a principle of public policy, to prevent fraud, and to remove all temptation for its commission. * * * A principle applying to all this class of cases is that on the person claiming under the contract or gift rests the burden of proving satisfactorily that it is just, fair, and equitable in every respect. and not on the party seeking to avoid it, to establish that it is fraudulent." McQueen v. Wilson (Ala.) 31 South. 94; Ferguson v. Lowery, 54 Ala. 510, 24 Am. Rep. 718; Johnson v. Johnson, 5 Ala. 90.

It is unnecessary to cite cases on this equitable principle. In all, the burden is upon the defendant obtaining the advantage through such fiduciary relationship to vindicate the transaction. Measured by these rules, under the evidence before this court, we feel that a court of equity cannot permit the document now of record and affecting the title to the property described therein to remain vested by law with potency to carry the title to the defendant. The same should be adjudged and decreed of no force and effect; vacated, canceled, and held for naught. This is the judgment of the court.

The judgment, order, and decree of the trial court in favor of the defendant is reversed, with direction to enter judgment as prayed by the plaintiffs.

HARRISON, PHELPS. LESTER, HUNT, CLARK, RILEY, and HEFNER, JJ., concur.

Note.—See 9 C. J. p. 1252, §190; p. 1256, §195; 13 C. J. p. 496, §330; 18 C. J. p. 423, §502; p. 427, §511; p. 446, §552; anno. 52 L. R. A. (N. S.) 476; 4 R. C. L. pp. 492, 493; 1 R. C. L. p. 1147; 6 R C. L. Supp. p. 255.