BERGMAN v. SMALLEY et al.

No. 34685. Nov. 13, 1951.

*237 P. 2d 881.*

Lloyd R. Lowry and A. G. T. Vaughn, Weatherford, for plaintiff in error.

Arney & Arney, Weatherford, for defendants in error.

JOHNSON, J. The parties herein occupy the same positions as in the trial court and hereafter they will be referred to as plaintiff and defendants.

This is an appeal from the district court of Washita county, Oklahoma, involving the validity of two warranty deeds to two quarter sections of land,

in which Jacob K. Bergman was grantor and Harvey Smalley and Lavita Smalley, husband and wife, were the grantees, and not related to grantor by affinity or consanguinity.

Grantor died on the 14th day of February, 1949, and Alfred G. Gray was appointed and qualified as his administrator and brought suit to cancel the deeds of grantor, under which the grantees claim the said land located in Washita county, Oklahoma.

Plaintiff alleged that because of Jacob K. Bergman's bad health, old age and infirmity, the confidential relationship between him and the grantees, the defendants herein, the undue influence, domination, and control exercised by them over him and the lack of consideration, lack of independent advice and counsel to grantor, the deeds were invalid and should be canceled.

The defendants' answer denied these allegations, except as to old age and infirmity.

The cause was tried to the court February 9, 1950. Defendants' demurrer to plaintiff's evidence was overruled and case continued to the 23rd of February, when judgment was rendered for the defendants. Thereafter, the administrator resigned and Bill Bergman was appointed as his successor and the cause was revived in his name.

Plaintiff presents his assignments of error under three propositions, which, in substance, are that the judgment is against the clear weight of the evidence, is not sustained by the evidence, and is contrary to law.

A judgment, in an action of equitable cognizance, must and will be affirmed unless the judgment is clearly against the weight of the evidence. Mosier v. Tinker, 118 Okla. 85, 246 P. 593.

The defendants' brief outlines fairly the essential highlights of the testimony adduced in behalf of the plaintiff and defendants, which was, in substance, as follows:

Plaintiff, administrator of the estate of Jacob K. Bergman, deceased, testified as to his official capacity. Harvey Richert testified that he made deceased's tax returns and that Harvey Smalley furnished the books and records for such computation. Isaac Bergman, brother of deceased, testified that he had rented some land from deceased and that he visited deceased "off and on, different times"; that deceased told him to see Harvey, that he was taking care of the money for him. A sister of deceased, Sarah Reimer, testified she visited deceased " . . . whenever we had some business at Weatherford . . .", and also that the family had a lawsuit over their mother's estate; that the deceased was never married and had no children. Cornelius Bergman, another brother of deceased, testified that he saw deceased only a few times during his last 3-year illness; that deceased left his parents' home at an early age, and lived with the Dunn family from that time until his death, a period of 50 years. Cornelius Reimer, husband of Sarah Reimer, testified that they visited deceased "occasionally"; that deceased lived in the Dunn home practically all his life, and that defendant Lavita Smalley lived in the same home several years. A brother-in-law, E. G. Dierkson, testified that the deceased never discussed his business with witness. Justina Bergman, whose husband was a brother of deceased, testified as to conflict over a mortgage held by deceased; that defendant Harvey Smalley took no part in it. Jacob Penner, a nephew by marriage, testified as to the good care that the deceased received during his illness. Plaintiff's witness, Frank Penner, a nephew by marriage, of deceased, testified that deceased never discussed his business with witness. A witness, Menno Bergman, testified that deceased and defendant Harvey Smalley had been associated together since 1933 or 1934. Mrs. C. O. Heidebrecht, niece of deceased, testified that deceased was living in the Dunn home as early as 1924.

The following witnesses testified on behalf of the defendants: Dr. J. L.

Friedline testified he attended deceased on February 23, 1946, the day the deeds were executed and on 41 other occasions during 1944, 1945, and 1946; that deceased was at all times mentally competent, with a clear and alert mind and specifically so on February 23, 1946; that he was not taking sedatives; that deceased was not ill to the point of ignoring worldly affairs.

Attorney Eugene Forbes testified to doing deceased's legal work since the '20's; to his close acquaintance with deceased and to deceased's being a shrewd business man. He testified that he prepared and notarized the deeds herein involved; that deceased requested the deeds made, specifying the information and life estate reservation; that deceased was fully competent, strong willed, not subject to influence, fully aware of the consequence and meaning of the deeds and fully capable; that none other than deceased instructed him as to drawing the deeds.

Pete Friesen testified that he was a close acquaintance and partner of deceased for long years; that deceased was of strong will and mind; that his mind during his illness showed no change from prior years; that deceased made statements subsequent to February 23, 1946, showing his knowledge and ratification of the making of the deeds; that defendants possessed their home in town formerly belonging to Bergman and Friesen, prior to the illness of deceased.

Jake Kroeker testified that he was employed by deceased as early as 1924; that deceased was shrewd, of strong mind; that deceased sent him to get Attorney Forbes to draw the deeds in question; that deceased made statements subsequent to the execution of the deeds, indicating his knowledge and ratification of the act; that deceased's mental condition on the date of making the deeds was "just like always"; that he was fully capable of such act and that deceased stated that the reason for conveying the property was that " . . . he wanted to dispose of his prop-erty while he was still alive; he wanted to dispose of it so it would all be cleared up for him when he died"; witness testified as to holding a deed to other property from deceased to defendants in escrow which was executed in 1940, with instructions to deliver same to defendant Smalley in case something happened to deceased; that deceased instructed witness on February 23, 1946, to deliver the deed to defendant Smalley at that time; that defendant Lavita Smalley was taken into the Dunn home under the auspices of deceased when she was 3 years old, remaining there until her marriage; that when deceased executed the deeds in question he stated to witness that he was destroying a will and executing deeds, so there would be no argument about it.

Cpl. Keith LaMee testified that he was taken into the Dunn home in 1940, when he was 10 years of age, out of deceased's kindness for an under-privi-leged boy; that he was called to deceased's bedroom on February 23, 1946, and offered property by deceased and that he refused same; that deceased made statements in 1948 showing his knowledge and ratification of the deeds herein involved.

Defendant Lavita Smalley testified that she was taken in and cared for by deceased; of the love that existed between them; that she was reared by deceased from the age of 2 years, until her marriage; that she returned to Oklahoma from Colorado after her marriage in order to be near deceased during his illness; that she remained there until the death of deceased in 1949; that she stayed in the Dunn home with deceased and helped look after him during his illness although she had children of her own to care for.

Charles Addisson testified that he had been dealing with deceased since 1923; that deceased had good business ability; that he visited deceased once or twice every week during his three-year illness; that he was in good mental condition and a very determined sort of man.

The evidence in this case does not sustain plaintiff's contentions.

However, plaintiff argues that there is conclusive evidence that a highly confidential relationship existed between the grantor and the grantees and that it was incumbent upon defendants to render "the fullest and fairest explanation of every particular resting in their breasts" concerning this transaction; that defendant Harvey Smalley did not even testify in his behalf; that defendant Lavita Smalley, while testifying, made no attempt to make a clean breast of the situation; that she was not even asked about undue influence; that both defendants were competent to testify concerning fiduciary relationship and undue influence; that they both knew whether a confidential relationship existed or not and both knew whether or not they had taken advantage of their fiduciary relationship and exercised undue influence; that the only direct question asked concerning undue influence was propounded to Attorney Forbes, which was:

"Q. You don't know whether any influence was used by Harvey and Lavita Smalley to induce this sick and aged man to do that? (execute the deeds) You don't know that? A. If they did they did it on the sly."

Plaintiff made no attempt to cross-examine defendant's witnesses on this issue.

The general rule is that the persons claiming under a contract or gift have the burden of proving satisfactorily that it is just, fair and equitable in every respect and not on the party seeking to avoid it, to establish it is fraudulent. Johnson v. McCray, 122 Okla. 301, 254 P. 979; Montgomery v. Willbanks, 198 Okla. 684, 181 P. 2d 240.

We are of the opinion that the defendants sustained this burden. The persons who knew and associated with Jacob K. Bergman testified in behalf of defendants, to wit: His physician, who attended him on the date the deeds were executed; his attorney for 30 years, who drew and notarized the deeds; his former partner, who had known grantor for 50 years; his former employee, who had known him since 1913 and had worked for him as early as 1924, and whom Bergman first called to draw the deeds; Cpl. Keith LaMee, who was principally reared by grantor, and others whose testimony we have already outlined.

In Canfield v. Canfield, 167 Okla. 590, 31 P. 2d 152, we said that the word "undue" when used to qualify "influence" has the legal meaning of "wrongful" so that "undue influence" means a wrongful influence, but influence acquired through affection is not wrongful.

Mr. Bergman was never married and had no children of his own, but had taken Lavita Smalley into his home when she was only 2 years old, where she lived until she married and after her marriage returned to assist him during his last illness.

Mr. Bergman had not lived with any of his blood relatives since he was very young (more than 50 years). He retained a life estate in the property deeded to Lavita and her husband; thus, confirming the testimony concerning his good business judgment and thereby affirmatively declaring his affection for Lavita whom he had reared and Harvey, her husband, who had been with him in business for several years, by deeding to them the rights of "remainderman".

For the above reasons, we hold that the judgment is not against the clear weight of the evidence or contrary to law.

The judgment is affirmed.

HALLEY, V. C. J., and WELCH, CORN, GIBSON, DAVISON, O'NEAL, and BINGAMAN, JJ., concur.