Maude I. ROBERTS, formerly Maude I.
Teeter, Plaintiff in Error,

v.

Fleeta Teeter HUMPHREYS and George
Howard Teeter, Defendants in Error.

No. 38833.

Supreme Court of Oklahoma.

Oct. 25, 1960.

Wilson, Wilson & Massad, Frederick, for plaintiff in error.

Arthur A. Kelly, Frederick, for defendants in error.

BERRY, Justice.

In this action, plaintiff in error, Maude I. Roberts, hereafter referred to as "plaintiff", seeks to cancel a warranty deed under date of July 28, 1958, by the provisions of which she purported to convey to defendants in error, Fleeta Teeter Humphreys, hereafter referred to as "Fleeta", and George Howard Teeter, hereafter referred to as "George", fee simple title to a 160-acre farm lying in Tillman County, Oklahoma, less a reserved life estate. Fleeta is plaintiff's sister. George is the son of plaintiff's brother, Grover Teeter, hereafter referred to as "Grover".

In the petition filed herein plaintiff alleged in substance that the deed was executed without consideration; that "by artful conduct and blandishments, false and fraudulent pretenses, threats, duress and undue influence directed upon said plaintiff, and preying upon the false fears induced by her in plaintiff's mind regarding her future health, security, and well-being, fraudulently caused and induced said plaintiff" to execute said deed; that the deed was executed by reason of undue influence of Fleeta and was not the free and voluntary act of plaintiff.

Defendants in error filed a joint answer wherein they admitted that plaintiff was the owner of the farm at the time plaintiff executed the deed in controversy but specifically denied all other material allegations of the petition.

Following trial of case to the court, judgment was entered in favor of defendants. From order of trial court denying plaintiff's motion for new trial, she perfected this appeal.

The record discloses that in 1907, plaintiff who was then 21 years of age, applied for homestead rights on the farm. Upon payment of the required consideration a patent to the farm was subsequently issued by the Federal Government. Plaintiff's father paid the bulk of said consideration and Grover paid the balance. It appears that plaintiff, her father, Grover and Fleeta resided on the farm from date of entry thereon to date of issuance of patent thereto. At the time Fleeta began to reside on the farm she was 13 or 14 years old. During the 15 or 18 months that she resided on the farm she assisted in performing housework and doing chores. Plaintiff's father and Grover were engaged in business in a nearby town. It appears that following the death of plaintiff's mother about 1900, plaintiff assisted in rearing Fleeta.

Following the death of plaintiff's husband, she, for a period of some 20 years, made her home with her sister, Treva Malone, hereafter referred to as "Treva". Plaintiff did not reimburse Treva for her care and support, other than by occasional gifts. It appears that the only property that plaintiff owned was the farm and that her annual income was approximately $600 a year.

Plaintiff has been in ill health for many years. In the Spring of 1958 Fleeta came to Treva's home in Oklahoma City and plain-

tiff returned with Fleeta to her home in Grandfield, Oklahoma, for a visit. While at Fleeta's home plaintiff's health worsened and she was confined to her bed. Plaintiff's physical condition was such that she was of the conviction that she would die. It was during this period that plaintiff executed the deed in controversy.

It appears that Fleeta requested a Mr. B. who was a Notary Public, to prepare the deed in controversy and to come to her home for the purpose of taking plaintiff's acknowledgment to the deed. At the time Mr. B. arrived at Fleeta's home, plaintiff was confined to her bed. She then wore only a night gown. Fleeta came to her room and asked her to put on a dressing gown which she did. In replying to a question relative to whether plaintiff executed the deed as a result of threats and coercion on Fleeta's part, plaintiff stated "Yes, she told me I had to do it. She took me by the arm and she said 'You get in there and sign it.' She said I had to do it. 'If you don't sign this deed, I will beat you up', she said. And she knew I was very sick." Plaintiff testified that she was so ill when she made the deed that she didn't understand the nature of her acts; that she didn't want to give away the only property that she owned.

Prior to 1958 plaintiff had executed two deeds to the farm. In one deed Treva was named as grantee and in the other Treva's son, Eugene, was named as grantee. These deeds which were placed in plaintiff's and Treva's joint safe deposit box were never recorded. Treva's husband died while plaintiff was visiting at Fleeta's home. Upon learning of the death, Fleeta inquired of plaintiff about the farm and learned of the deeds to Treva and Eugene. In connection with her conversation with plaintiff concerning the farm, Fleeta testified in part that "she was there (at Fleeta's home) six or seven weeks in all. She thought she was going to die; and I didn't know whether she would or not. She had high blood pressure; it had been around two hundred for the last twenty-five or thirty years. I never had asked her anything about the

farm; nothing about what she had done about the farm. So I asked her what she had done about the farm in case she should die, and she told me she had made a deed to Mrs. Malone, and also one to Mrs. Malone's son, Eugene, and they were notarized and ready to record. They had them jointly in a deposit box in both their names, Mrs. Malone's and Mrs. Roberts'. I asked her if she thought that was fair to me, me having lived on it and proved up on it, and she said no, she didn't, that she didn't want Eugene to have the farm and that she also promised Grover—that's Howard's father—that she was going to leave Howard something, and I said, 'You know the way it is fixed he will never get anything' ". Fleeta testified further that plaintiff was willing to make the deed in controversy. Fleeta denied that she threatened plaintiff.

While the deed recites a consideration of $10 it stands admitted that no cash consideration was paid. In fact, upon plaintiff leaving Fleeta's home a short time after the deed was executed, she gave Fleeta a check in the amount of $75, the major portion of which was used in paying doctor and medical bills incurred by plaintiff during her illness at Fleeta's home. Fleeta retained the balance.

Fleeta at no time contributed to plaintiff's care and support. Treva not only furnished plaintiff with the usual necessities of life but also paid some of the doctor and medical bills which plaintiff incurred.

The trial court found "that the allegations of plaintiff's petition are not supported by the evidence, and the Court expressly finds that the said deed instrument was not executed by reason of the fraud, undue influence, imposition, threats, coercion, duress, false pretense, blandishment or misrepresentation of the said defendants, or either of them, and that said deed instrument was executed by the said plaintiff of her own free will and accord, and that said deed instrument was executed for a good and sufficient legal consideration, and that the said deed instrument was properly executed and

delivered as required by law and that the recording of the same was regular and proper." Upon said findings, judgment was entered in favor of defendants.

The evidence shows that plaintiff had been in ill health for many years prior to execution of the deed; that she was approximately 73 years old when the deed was executed; that she was then of the conviction that death was imminent; that Fleeta knew that plaintiff was and for many years had been ill and that plaintiff was then of the conviction that she would die within a short time; that the deed was executed for the sole purpose of distributing plaintiff's property at death, which property consisted of the farm, and was not intended as an inter vivos gift; that Fleeta convinced plaintiff that Eugene would take the farm upon her death, when in fact Treva would probably have taken the farm under the deed she held from plaintiff; that the deed was executed at Fleeta's home at a time when plaintiff was ill; that Fleeta arranged for preparation of the deed; that plaintiff was to a great extent wholly dependent upon the benevolence of others; that as a result of plaintiff's age and long-continued illness she was dominated by Treva and Fleeta who were her sisters.

■ The fact that plaintiff's evidence was directed primarily to the proposition that her execution of the deed in controversy resulted from duress on Fleeta's part and the fact that the trial court chose to believe Fleeta's testimony to the general effect that she did not exercise duress, does not establish that plaintiff is not entitled to recover herein. In our opinion when evidence introduced by both plaintiff and defendants is considered, the fact that a confidential relationship existed between plaintiff and Fleeta is clear and it is equally clear that execution of the deed in fact represented the exercise of Fleeta's will and not plaintiff's.

In Hogan et al. v. Leeper, 37 Okl. 655, 133 P. 190, 47 L.R.A.,N.S., 475, this was said in the third paragraph of the syllabus:

"The evidence showed that a son came to the city of his father's residence, employed a lawyer, and had the lawyer to prepare a deed of trust conveying all of his father's real estate to a trustee for the life of his father, with directions to apply $40 per month of the income to the support of the father and the balance to the expenses of the trust and payment of certain mortgages on some of the property. The father was then requested to * * * sign the deed of trust and was told that if he did not proceedings would be commenced to appoint a guardian for him. He then signed the instrument without having had time or opportunity to reflect or consult friends or counsel of his own choosing, saying at the time that he was signing his life away. HELD, that the instrument should be canceled."

■ A confidential relationship may arise by reason of kinship and where said relationship operates largely to cause the substitution of the will of the grantee for that of the grantor, the deed will be cancelled. See 15 C.J.S. Confidential, p. 821; White et ux. v. Morrow, 187 Okl. 72, 100 P. 2d 872, and Johnston et al. v. McCray, 122 Okl. 301, 254 P. 979.

■ In the last above cited case we held in substance that where a grantor of advanced age, who is enfeebled in body and mind, transfers property to one (his wife) who occupies a fiduciary relationship to him, a presumption of fraud arises which unless successfully rebutted "by showing absolute fairness and good conscience in the transaction and clear understanding thereof by the grantor, a court of equity will vacate and set aside such deed or contract."

The first paragraph of the syllabus to Montgomery v. Willbanks et al., 198 Okl. 684, 181 P.2d 240, 241, reads as follows:

"Fraud and undue influence will not be presumed, but ordinarily must be proven by clear, cogent and convincing testimony. However, where fraud and undue influence are alleged and facts

sufficient to show inadequacy of consideration and a confidential relationship are proven, the one occupying such a position of confidence will be required to go forward and make a full and complete disclosure showing absolute good faith and that there was no fraud or undue influence practiced in a transaction between the parties."

See also Bergman v. Smalley et al., 205 Okl. 313, 237 P.2d 881; Johnston v. McCray, 122 Okl. 301, 254 P. 979 and Montgomery v. Willbanks, 198 Okl. 684, 181 P. 2d 240.

Fleeta points out in her brief that the trial court stated in substance that plaintiff was probably more completely dominated by Treva than Fleeta. When it is remembered that in this action plaintiff seeks to cancel her deed to Fleeta and not her deed to Treva, and that the latter's domination of plaintiff did not cause plaintiff to execute the deed in controversy, Treva's domination is without significance. The significant fact is that plaintiff was dominated by Fleeta and that as a result of said domination Fleeta obtained the deed in controversy.

█ We are convinced that defendants wholly failed to sustain the burden cast upon them under the rule announced in the cases last above cited; that the judgment of the trial court is against the clear weight of the evidence and for said reasons the judgment of the trial court should be and same is hereby reversed. In view of the fact that this case is of equitable cognizance, it is our duty to render judgment for plaintiff cancelling the deed in controversy which, in our opinion, is the judgment that the trial court should have rendered.

Reversed.

DAVISON, C. J., WILLIAMS, V. C. J., and WELCH, JOHNSON, BLACKBIRD and IRWIN, JJ., concur.

HALLEY and JACKSON, JJ., concur in result.