**R. M. LaDOUX, Plaintiff in Error,**
**v.**
**Hettie BOHN, Defendant in Error.**
**No. 41063.**

Supreme Court of Oklahoma.
Nov. 9, 1966.

Lester R. Maris, Ponca City, for plaintiff in error.

C. Marland Johnson, Ponca City, for defendant in error.

## PER CURIAM.

In this appeal, the parties appear in the same order in which they appeared in the trial court, and will be referred to by their trial court designations of "plaintiff" and "defendant".

Plaintiff, a widow more than 80 years old, commenced this action in July, 1962, to cancel a warranty deed to her home in Tonkawa, executed and delivered to defendant, Rina Mable LaDoux, on July 12, 1961.

Defendant was then about 49 years old and had known plaintiff and her aged sister, Mrs. Mary Bennett, of Wichita, and Mrs. Emma Wahl (who also apparently resides away from Tonkawa) about 30 years, or since defendant was 19 years of age. In fact, defendant had resided in the home of Mrs. Bennett for a period of 5 years when she was young, and before this controversy arose, their relationship was apparently very close. Defendant called Mrs. Bennett "Moms" and, though defendant had not resided in her home for 25 years during which she was doing "Bible work", except for annual visits, Mrs. Bennett, during her late husband's last illness in January, 1961, summoned her back to Wichita from Miami Beach, where she was director of a Bible Center, and defendant thereafter again stayed in the Bennett home and chauffeured Mrs. Bennett back and forth from it to Mr. Bennett's bedside in the hospital. When Mr. Bennett died on January 22, 1961, defendant stayed on in Wichita with Mrs. Bennett who was almost

blind and undergoing a period of emotional instability.

In early May, 1961, defendant and Mrs. Bennett learned, through a telephone call from neighbors of the plaintiff in Tonkawa, that plaintiff had just suffered a stroke, and they immediately left Wichita, and, accompanied by plaintiff's sister, Grace, came to plaintiff's bedside in Mrs. Bennett's automobile. After the three women had arrived at plaintiff's home and observed her condition, defendant drove the sister back to her home and returned to Wichita the same day, leaving Mrs. Bennett to attend plaintiff. Thereafter, defendant and Mrs. Bennett alternated in coming to Tonkawa and caring for plaintiff all that summer of 1961, and until her condition had improved to the point she didn't need aid or nursing.

About May 12, 1961, Mrs. Bennett summoned defendant to Tonkawa from Wichita, by a post card, telling her, among other things, that plaintiff had "some things" she wanted her to do. The next day defendant returned to Tonkawa and acted as plaintiff's attendant several consecutive days. During the 12 intermittent periods from May to October, 1961, that defendant was in Tonkawa, she transacted such business for plaintiff as redrafting her former will, making deposits of money, etc. During one of defendant's sojourns in plaintiff's home, Mr. H, a Tonkawa attorney, accompanied by his wife who was a Notary Public, brought to plaintiff's home the subject deed he had drawn, and plaintiff executed it in her dining room in defendant's presence, and Mr. H thereupon caused it to be filed for record.

In the petition plaintiff filed herein approximately a year later, she alleged, among other things, in substance, that though the deed recited a consideration of "$10.00 and other consideration", there was no consideration for the deed's execution, that it was obtained " * * * by the artful conduct and blandishments, false and fraudulent pretense, threats, duress and undue influence, directed upon * * *" her; and that (defendant by) "preying upon the false fears induced by the defendant in the plaintiff's mind regarding her future health, security and wellbeing, fraudulently caused and induced * * * Plaintiff to execute * * *" the deed. In defendant's verified answer, she admitted the execution, and delivery of the deed, denied that plaintiff was thereafter the owner of the property, and alleged that she was in possession of it merely as defendant's tenant. Defendant also denied that there was no consideration for the deed's execution and alleged that it had a good and valuable consideration. Defendant also specifically denied the parts of plaintiff's petition referring to defendant's alleged false and fraudulent pretenses, threats, artful conduct and blandishments, duress and undue influence, etc.

After trial of the case to the court, judgment was rendered for plaintiff. The journal entry of said judgment reflects the following findings by the Court:

"* * * That there was in this case influence of a strong person over a very, very weak person, in fact so weak that the Court must find that the plaintiff did not have the mental capacity to contract at the time of the conveyance to the defendant. The Court further finds that there was grossly inadequate consideration paid for the property conveyed, and that the defendant occupied a confidential relationship with the plaintiff. · * * *."

After the overruling of her motion for a new trial, defendant perfected the present appeal.

Under the first "Proposition" defendant urges for reversal, she points out various allegations of plaintiff's petition that were never proved at the trial and urges that the burden was upon plaintiff to do this. Her argument is without merit. The authorities she cites to the effect that a party has the burden of proving every fact essential to his or her cause of action set forth abstract principles of law that are correct, but they show no cause for reversing the judgment appealed from, be-

cause the reported opinions of this court are replete with those to the effect that most of the conditions alleged in plaintiff's petition are not necessary, where a confidential relationship and a grossly inadequate consideration are present. For instance, in Griffith v. Scott, 128 Okl. 125, 261 P. 371, this court held:

> "Where it is shown that a transfer of property was obtained from an aged person by one experienced in business transactions, and in whom the grantor reposed confidence and was acting upon the suggestion and advice of the grantee at the time of the execution of the claimed transfer, though such confidential relation arose upon an acquaintanceship of short duration to the time of the transaction, and that no consideration or a very inadequate consideration was paid the grantor, and there is apparent a marked disparity between the parties in mentality as by experience in business affairs, although the transaction could not have been impeached if no such confidential relation had existed, a very strong presumption of fraud arises, and, unless it is successfully rebutted, a court of equity will set aside the deed so obtained."

And, in White v. Morrow, 187 Okl. 72, 76, 100 P.2d 872, 875, 876, we quoted the following from Logan v. Brown, 20 Okl. 334, 95 P. 441, 20 L.R.A.,N.S., 298:

> "While equity does not deny the possibility of valid transactions between parties where a fiduciary relationship exists, yet, because every such relation implies a condition of superiority held by one of the parties over the other, in every transaction between them by which the superior party obtains a possible benefit, equity raises a presumption against its validity * * *."

And, in Roberts v. Humphreys, (Okl.), 356 P.2d 370, 373, we said:

> " * * * the fact that the trial court chose to believe Fleeta's testimony to the general effect that she did not exercise

duress, does not establish that plaintiff is not entitled to recover herein. * * *
> * * * * * *
> "In the last above cited case (Johnson et al. v. McCray, 122 Okl. 301, 254 P. 979) we held in substance that where a grantor of advanced age, who is enfeebled in body and mind, transfers property to one * * * who occupies a fiduciary relationship to him a presumption of fraud arises which unless successfully rebutted 'by showing absolute fairness and good conscience in the transaction and clear understanding thereof by the grantor, a court of equity will vacate and set aside such deed or contract.' "

And, in Montgomery v. Willbanks, 198 Okl. 684, 181 P.2d 240, we held, in part:

> " * * *, where fraud and undue influence are alleged and facts sufficient to show inadequacy of consideration and a confidential relationship are proven, the one occupying such a position of confidence will be required to go forward and make a full and complete disclosure showing absolute good faith and that there was no fraud or undue influence practiced in a transaction between the parties."

See also Rector v. Bay, 91 Okl. 14, 215 P. 415, Haggarty v. Key, 100 Okl. 238, 229 P. 548, and Marshall v. Grayson, 64 Okl. 45, 166 P. 86.

In view of the above, it is unnecessary for us to comment in detail upon defense counsel's rather lengthy effort to demonstrate the respects in which the evidence in this case failed to establish various charges made in plaintiff's petition concerning defendant's conduct in the matter of obtaining the deed. Counsel does not seriously deny that at the time of its execution, plaintiff was in a weakened condition, both mentally and physically, as a result of her recent stroke, nor that, between the two parties there existed a confidential relationship in which defendant occupied the dominant and superior position, while plaintiff was the weaker and less able party, who relied, and depended, upon de-

fendant. All of the evidence on that subject indicates that the relationship between defendant and plaintiff's sister very closely resembled that of a daughter and mother, and that until plaintiff realized that she had been divested of the title to her home, which she would need after her recovery from her serious attack, she trusted defendant as implicitly as if she had been her sister's natural daughter, and it is plain from the trial judge's remarks from the bench at the close of the trial that these facts, and the fact that $10.00 was a grossly inadequate consideration for title to plaintiff's property, were controlling considerations in arriving at his decision.

Defendant's brief refers to plaintiff's testimony to the effect that defendant's remarks to her during her disability had her thinking she might die. Then her counsel says, in substance, that such remarks if made, were neither misrepresentations, nor constituted fraudulent pretense, or any of the other elements named in plaintiff's petition. He then points out that the evidence fails to establish when, in relation to the execution of the deed, such remarks were made. Assuming, without deciding, the correctness of counsel's statements, we find in them nothing to detract from the evidence indicating that plaintiff's belief in the very real danger of her death, after her stroke, created in her a psychological condition which made her unusually subject to unfair suggestions, undue influence and incompetent, or at least ill-considered, decisions concerning the disposition of her wordly goods, which said mental condition reasonably appears to have extended over a period of several weeks.

■ The belated effort made in defendant's brief to show that the $10.00 in cash, which she testified she gave plaintiff for the deed, was not its only consideration, and that her nursing services to plaintiff, as well as her giving up her Bible Center business in Florida, when she returned to Oklahoma, should also be considered as part of the consideration for the deed, is not impressive in view of the fact that neither the nursing service, nor her leaving her work in Florida, were pleaded, or proved, to have been referable to any agreement between the parties; and such argument is inconsistent with the evidence indicating that other monitary means of compensating defendant for her nursing services was used both before, and after, the date the deed was executed and delivered.

■ Under defendant's "PROPOSITION II", she urges that neither in the parties' pleadings not in their stipulations at the pre-trial of this case, was there any mention of a contract, or agreement, between the parties, and, on the basis of this fact, her counsel first argues, in substance, that the trial court committed prejudicial error in allowing plaintiff to testify, over his objection, that defendant told her that if she (plaintiff) deeded her the property, she would "take care of" both plaintiff and her sister "for it." While recognizing that no agreement for defendant to care for plaintiff and her sister was an issue in this case, we think that, under a liberal interpretation of plaintiff's petition, a statement made by defendant, such as the one testified to by plaintiff, might well be considered as "coaxing" and be regarded as included within Webster's Dictionary's definition of a "blandishment"; and this may have been the opinion of the trial court, when, in admitting this testimony, he remarked, among other things: " * * * It's under the pleadings. * * *." Nor can we say that the testimony plaintiff's counsel was allowed to elicit from her concerning defendant's withdrawal of some of plaintiff's funds from the Albright Title & Trust was wholly irrelevant, for it tends to show the confidence and trust plaintiff exhibited in the defendant's handling of her business affairs. We are of a similar opinion concerning the testimony of plaintiff's sister showing how, after her husband's death, she had placed real estate in the defendant's name and deposited funds in a joint bank account with her. To us, this indicates a pattern of family trust and confidence in defendant that carried over to,

and was continued between, plaintiff and defendant. However, be these things as they may, from defendant's argument and our thorough examination of the record, it does not affirmatively appear that such evidence was a significant or decisive factor in the formulation of the trial court's judgment. See Thompson v. Taylor, 187 Okl. 2, 100 P.2d 860. In Bouse v. Johnston, 160 Okl. 168, 170, 16 P.2d 125, 126, we said:

"* * * The cause was tried before the court and not before a jury, and the trial court was capable of determining which evidence should be considered in arriving at the proper conclusion. The judgment of the trial court should not be set aside in such cases unless it appears that the error complained of has probably resulted in a miscarriage of justice. * * *."

In cases of equitable cognizance tried without a jury, such as the present one, the matter of admitting or rejecting evidence "is one trusted largely to the sound discretion of the trial court * * *". Tobin v. O'Brieter, 16 Okl. 500, 85 P. 1121. Since, as we view it the judgment of the trial court is not clearly against the weight of the evidence, it cannot be assumed that it "was to any extent whatsoever based upon, or influenced by the allegedly inadmissible evidence." Thompson v. Taylor, supra. On the contrary, "* * * it must be shown that the judgment rendered rests solely upon such incompetent evidence." Liles v. Bigpond, 190 Okl. 112, 121 P.2d 596, 599. See also Daniels v. Mohon, (Okl.) 350 P.2d 932, 935, 936. There is no such showing here.

In view of the foregoing, the judgment of the trial court is hereby affirmed.

JACKSON, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, IRWIN, BERRY and HODGES, JJ., concur.

HALLEY, C. J., concurs in result.

The Court acknowledges the services of William W. Bailey, who with the aid and counsel of John R. Carle and Lloyd E. Cole,

Jr., as Special Masters, prepared a preliminary advisory opinion. These attorneys had been recommended by the Oklahoma Bar Association and appointed by the Court. The Chief Justice then assigned the case to BLACKBIRD, J., for review and study, after which and upon consideration by the Court, the foregoing opinion was adopted.